988 F.2d 1323
 61 USLW 2598, 28 Collier Bankr.Cas.2d 947,
24 Bankr.Ct.Dec. 183,
Bankr. L. Rep. P 75,191
 Thomas M. GERMAIN, Trustee for the Estate of O'Sullivan's
Fuel Oil Co., Inc., Plaintiff-Appellee,
v.
The CONNECTICUT NATIONAL BANK, Defendant-Appellant.
 No. 303, Docket 92-5046.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 2, 1992.
Decided March 24, 1993.
 
 Janet C. Hall, Hartford, CT (Linda L. Morkan, Robinson & Cole, of counsel), for appellant.
 Thomas M. Germain, Edward C. Taiman, Jr., Germain & Associates, Hartford, CT, on the brief, for appellee.
 Before: MESKILL, Chief Judge, OAKES and McLAUGHLIN, Circuit Judges.
 MESKILL, Chief Judge:
 
 
 1
 This case involves the interaction of the Seventh Amendment to the Constitution and the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (Bankruptcy Code). The Connecticut National Bank ("CNB" or "the Bank") appeals from the judgment of the United States District Court for the District of Connecticut, Dorsey, J., affirming the bankruptcy court's decision to grant the bankruptcy trustee's request for a jury trial. CNB, a creditor of the bankrupt, argues that a Chapter 7 trustee does not have a constitutional right to try before a jury its claims against the Bank because the claims arose post-petition and implicate provisions of the Bankruptcy Code. Thomas M. Germain, the trustee of the bankrupt's estate (the Trustee), counters that because his claims are legal in nature and because he seeks only legal relief in the form of money damages, he is entitled to a jury trial under the Seventh Amendment. We agree with the Trustee and therefore affirm the decision of the district court but in so doing we assume that the Trustee has waived his right subsequently to seek equitable subordination of CNB's claim on the basis of the same alleged misconduct that is to be litigated before a jury.
 
 BACKGROUND
 
 2
 O'Sullivan's Fuel Oil Co., Inc. (the debtor) was in the business of retailing and transporting heating oil within Connecticut and other parts of the United States. On January 18, 1984 the company filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code. In 1986 the bankruptcy court converted the case to a Chapter 7 proceeding on a motion by a creditor not a party to the present action, and at that point Thomas Germain became the trustee of the debtor's estate. Six months later CNB filed its proof of claim in bankruptcy court. Then, on May 29, 1987, after another six months, the Trustee commenced suit against CNB in Connecticut state court, stating six causes of action, five of which are still pending.[1] The predicate misconduct is alleged to have occurred from about November 1983 to August 24, 1984, but both the district and bankruptcy courts have found that no meaningful cause of action arose until some time after the bankruptcy petition was filed.
 
 
 3
 After the commencement of the suit, CNB removed it to bankruptcy court where it now resides. The Trustee filed a request for a jury trial and subsequently moved to have the action withdrawn from bankruptcy court under 28 U.S.C. § 157(d) based in part on this request. The motion was stayed pending a determination of whether the Trustee's action constituted a "core proceeding" under 28 U.S.C. § 157(b).[2] The district court adopted the bankruptcy court's recommendation that the action was indeed "core" but nevertheless affirmed that court's decision that the Trustee was entitled to a jury trial. This appeal followed.
 
 
 4
 The underlying lawsuit alleges essentially that CNB used its power as the debtor's primary lender to exercise control of the debtor to its detriment. Thus, prior to the filing of the voluntary petition CNB allegedly threatened to file a petition for involuntary bankruptcy against the debtor unless management of the company was turned over to CNB's handpicked man, James Tisdale. The Bank then allegedly strongly recommended to the debtor's principal stockholder that the debtor file a voluntary petition. After the petition was filed, CNB allegedly resisted all efforts to have James Tisdale and his brother Charles removed by threatening to terminate post-petition financing, threatening to force the debtor out of business and threatening to convert the proceeding from Chapter 11 to Chapter 7. In addition, the Trustee claims that CNB encouraged the Tisdales to create a corporation to take over the debtor's assets and forced the debtor to hire a law firm and insurance company of the Bank's choice. The Trustee's complaint charges that although the Tisdales relinquished control of the debtor on August 24, 1984, during their short tenure they irreparably wasted the debtor's assets. Ultimately, the debtor's business was destroyed and liquidation became inevitable.
 
 
 5
 The Trustee has asked for money damages alleging that CNB's acts constitute (1) tortious interference with the debtor's business, (2) coercion and duress, (3) breach of the contractual duty of good faith, (4) unfair or deceptive business practices, and (5) misrepresentation. We do not consider the merits of these underlying claims but only whether their nature and context entitle the Trustee to a jury trial.
 
 DISCUSSION
 
 6
 In any action commenced in a federal court, "the right to a jury trial ... is to be determined as a matter of federal law." Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam). CNB, in opposing a jury trial, presents a federal constitutional argument that proceeds in roughly two steps. The Bank asserts first that the Trustee's claims are not legal in nature and therefore that the Seventh Amendment does not apply. If, however, they are determined to be legal in nature, CNB would nevertheless have us hold that the Trustee is not entitled to a jury trial either because he has voluntarily waived his right to one or because, under the "public rights" doctrine, his complaint states only violations of public rather than private rights. We find none of these arguments convincing.
 
 
 7
 I. Relationship Between the Trustee's Claims and the Bankruptcy Proceedings
 
 
 8
 Before directly addressing the Bank's substantive arguments, we must first discuss the relationship between the Trustee's claims and the bankruptcy proceedings. This discussion, although preliminary in nature, constitutes a great portion of our opinion because the relationship of the claims is integral to each of appellant's arguments and is at the crux of the appeal. The remainder of the opinion will draw on the reasoning and conclusions set out in this section.
 
 A. "Core" Proceeding
 
 9
 Judge Dorsey recognized that the designation of an action as "core" does not control whether or not the action may be tried before a jury. Germain v. Connecticut Nat'l Bank, 112 B.R. 57, 59 (D.Conn.1990).[3] The right to a jury trial is of constitutional concern. Neither Congress nor the courts may deprive litigants of their constitutional rights simply by labeling a cause of action "core." See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 61, 109 S.Ct. 2782, 2800, 106 L.Ed.2d 26 (1989). Thus the determination that the Trustee's action is "core" is entitled to minimal weight in reaching our ultimate decision on the jury trial issue.[4]
 
 B. The Claims-Allowance Process
 
 10
 Resolution of the Trustee's action is not required in order to determine whether to allow CNB's claim as a creditor in the bankruptcy proceeding. The Trustee asks for money damages to compensate the estate for the destruction of the debtor's business. If he wins, the estate is enlarged, and this may affect the amount the Bank and its fellow creditors ultimately recover on their claims, but it has no effect whatever on the allowance of the Bank's claims. Thus, a court could allow the Bank's claim before hearing argument on the Trustee's complaint, and this chronology would be both logical and consistent with the Bankruptcy Code.
 
 
 11
 This situation differs from those treated in some leading Supreme Court cases relied on by the Bank. In both Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam), reh'g denied, 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709 (1991), the issue was whether the trustee may void a preferential transfer without a jury trial. Under the Bankruptcy Code a court must disallow "any claim of any entity from which property is recoverable" because of a preferential transfer or fraudulent conveyance. 11 U.S.C. § 502(d).[5] Thus, before a claim may be allowed, a court must resolve any preference issues that the trustee might raise.
 
 
 12
 In denying each respective creditor a jury trial both the Langenkamp and Katchen Courts referred to the process of allowing and disallowing claims. See 498 U.S. at 43, 111 S.Ct. at 331; 382 U.S. at 336, 86 S.Ct. at 476. The Bank argues that this process is triggered as soon as a proof of claim is filed. We agree that the filing of a proof of claim is a necessary condition--the claims-allowance process can hardly begin before a claim is made--however, it is not a sufficient condition. For instance, 28 U.S.C. § 157(b)(5) requires bankruptcy litigants to try any personal injury or wrongful death action in the district court. This strongly suggests that these litigants are entitled to a jury trial in such an action even after a proof of claim has been filed in bankruptcy court. The very phrase "claims-allowance process" suggests that the resolution of the dispute in which a jury trial is sought must affect the allowance of the creditor's claim in order to be part of that process. A preference action does so; lender liability actions generally do not. Therefore suits like the Trustee's action in this case which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process.[6]
 
 C. The Substance of the Trustee's Complaint
 
 13
 The Bank contends that the substance of the Trustee's complaint exclusively raises bankruptcy law issues regarding, for instance, the automatic stay and the procedure for converting a Chapter 11 proceeding to a Chapter 7 case. While Bankruptcy Code provisions may be implicated here, the essence of the Trustee's allegations is that CNB's actions were inconsistent with its role as the debtor's primary lender and that as a consequence the debtor's business was destroyed.
 
 
 14
 The Trustee does not charge CNB with violating any Bankruptcy Code provision. By accusing CNB of undertaking to exercise control of the debtor, he does not thereby accuse CNB of violating the automatic stay, 11 U.S.C. § 362, no matter how "broadly" that provision is construed; instead, he accuses CNB of threatening to violate the stay in order to put undue pressure on the debtor. Similarly, the Trustee complains that CNB used the threat of forcing conversion of the case to exert influence over the debtor. It is the threat that constitutes CNB's alleged misconduct, not any cognizable violation of a Bankruptcy Code provision. CNB also believes that the Trustee has challenged the Bank's right to participate in the bankruptcy proceedings and to support a "competing reorganization effort." However, on this record the Trustee never disputed that CNB could submit a competing plan or participate in the proceedings like any other creditor. Instead, he challenged CNB's efforts to maintain the Tisdales in office through threats and coercion and to encourage the formation of a new corporation--a corporation to be formed allegedly not for the purpose of assisting in any reorganization plan, but in order to take over the debtor's assets. These are actions that are neither in violation of nor in compliance with the Bankruptcy Code, but are independent of and outside the reach of the bankruptcy process.
 
 
 15
 Without reviewing every attempt by CNB to recharacterize the Trustee's complaint, we observe that while some Bankruptcy Code provisions may be implicated, the form, substance and spirit of the complaint are all grounded in lender liability. The Trustee's action here is
 
 
 16
 quintessentially [a] suit[ ] at common law that more nearly resemble[s] state-law contract [and tort] claims brought by a bankrupt corporation to augment the bankruptcy estate than [it does] creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.
 
 
 17
 Granfinanciera, 492 U.S. at 56, 109 S.Ct. at 2797.
 
 
 18
 We now turn to CNB's main arguments.
 
 II. Seventh Amendment
 
 19
 CNB asks us to hold that the Seventh Amendment does not apply to the Trustee's action because it neither states legal claims nor seeks legal relief. We are disinclined to do so.
 
 
 20
 The Seventh Amendment preserves the right to trial by jury for suits at common law, not in equity. See Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47, 7 L.Ed. 732 (1830) (Story, J.). The standard test is to determine first whether the action would have been deemed legal or equitable in 18th century England, and second whether the remedy sought is legal or equitable in nature. The court must balance the two, giving greater weight to the latter. See Granfinanciera, 492 U.S. at 42, 109 S.Ct. at 2790.
 
 
 21
 As the Fifth Circuit has persuasively reasoned, claims analogous to tortious interference were historically tried in common law courts, In re Jensen, 946 F.2d 369, 371 (5th Cir.1991), and certainly some of the Trustee's other claims could have been tried there. See, e.g., Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n, 430 U.S. 442, 459, 97 S.Ct. 1261, 1271, 51 L.Ed.2d 464 (1977) (regarding breach of contract); 1 Joseph Story, Commentaries on Equity Jurisprudence 266 (14th ed. 1918) (regarding misrepresentation). In general, if some claims are legal, a party will not be denied a jury trial just because other claims arising out of the same facts are equitable. See, e.g., Curtis v. Loether, 415 U.S. 189, 196 n. 11, 94 S.Ct. 1005, 1009, n. 11, 39 L.Ed.2d 260 (1974); Song v. Ives Laboratories, 957 F.2d 1041, 1048 (2d Cir.1992).
 
 
 22
 The Bank argues, however, that none of the claims would have historically been tried before a jury because they arose during and are integrally related to equitable bankruptcy proceedings. As discussed in section I-C above, however, the claims are not bankruptcy claims and only incidentally implicate provisions of the Bankruptcy Code. Moreover, actions that are normally legal cannot be "magically converted into equitable issues" merely because they arise out of equitable proceedings. Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). This is because nothing has changed their essential character. A different result might adhere if the action had become part of the claims-allowance process, because determining pro rata distribution is characteristically equitable. See Katchen, 382 U.S. at 336, 86 S.Ct. at 476. An action that bears directly on the allowance of a claim is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations. If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy. As discussed in section I-B above, however, the Trustee's action here is not part of the claims-allowance process and is not integral to the reordering of relations among the parties. Consequently, the Trustee's action retains its legal character.
 
 
 23
 The Trustee ostensibly seeks only monetary relief. While CNB is correct that money damages can sometimes be an equitable remedy, the cases it cites deal with situations in which the plaintiff sought money damages in connection with other bankruptcy relief such as a declaration of dischargeability under 11 U.S.C. § 523(c), In re Smith, 84 B.R. 175, 180 (Bkrtcy.D.Ariz.1988), or the restitution of fraudulent transfers under 11 U.S.C. § 548, In re Harbour, 59 B.R. 319, 326 (W.D.Va.1986). Unlike those situations, the Trustee here is not asking for any bankruptcy relief, and the essence of his action is not equitable.[7] We conclude therefore that the Seventh Amendment applies in this case. Whether the Trustee has waived his right or loses his right because of the "public rights" exception is the subject of the next section.
 
 III. Waiver and "Public Rights" Theories
 A. Waiver
 
 24
 CNB argues that by filing a voluntary petition in bankruptcy the Trustee has waived any right he may have had to a jury trial. The argument runs in three steps: (1) a creditor who submits a proof of claim loses its right to a jury trial, (2) there is no principled reason to distinguish between a debtor and its creditor for these purposes, and (3) if a debtor has no right to a jury trial, neither can the debtor's estate or the trustee.
 
 
 25
 The argument collapses at the first step. As discussed in section I-B above, the Katchen, Granfinanciera, and Langenkamp line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue that bears directly on the allowance of that claim--and does so not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity. It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy. We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.
 
 
 26
 We believe that the recent Seventh Circuit decision, In re Hallahan, 936 F.2d 1496 (7th Cir.1991), cited by CNB, is distinguishable on its facts. In that case the debtor had been the defendant in an action for breach of a covenant not to compete. After the debtor filed a bankruptcy petition, the plaintiff in the prior suit filed both a proof of claim and a complaint for nondischargeability. Hallahan, the debtor, asked for but was refused a jury trial on the issue of dischargeability. The court held that in this type of situation, since the creditor would have no right to a jury trial, neither should the debtor.
 
 
 27
 Unlike the case at bar, the dispute at issue in Hallahan was initiated pre-petition by the creditor. It struck at the very heart of the bankruptcy process because it sought to determine whether the creditor actually possessed a claim at all, and if so, in what amount. It also was couched in a nondischargeability proceeding, a proceeding that is characteristically equitable. Moreover, while we are not convinced that justice or the Bankruptcy Code requires that both creditor and trustee be treated equally,[8] the Hallahan Court may have been influenced by the manifest unfairness of the debtor's filing for bankruptcy which stymied the creditor from pursuing its legal action already in progress. In our case, of course, the Trustee could not have used the bankruptcy process as a blocking mechanism, because the misconduct occurred and the suit arose after the bankruptcy filing. Consequently, we find Hallahan to be distinguishable.[9]
 
 
 28
 The Fifth Circuit, however, while concurring in the result reached by the Hallahan Court, disagreed with its reasoning, arguing that once a proof of claim is filed, both the creditor and debtor are assumed to have waived their right to a jury trial. In re Jensen, 946 F.2d at 374. We do not believe that to be the law. Moreover, the Jensen Court cited Hallahan only as dicta; it rested its decision not on a waiver theory, but on a theory that the debtors' claims were not part of the claims-allowance process because they were "essentially claims brought ... against non-creditor third parties to augment the bankruptcy estate." Id.
 
 
 29
 We conclude that neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed. For a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims. Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue.
 
 B. "Public Rights" Theory
 
 30
 The Granfinanciera Court wrote that, notwithstanding the Seventh Amendment, "Congress may decline to provide jury trials" for cases "involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to ... a specialized court of equity," because such rights are "public." 492 U.S. at 55 n. 10, 109 S.Ct. at 2797 n. 10. We have already explained why the Trustee's action is not statutory; he is suing in contract and tort. On its face, then, the Trustee's action cannot invoke the public rights doctrine. However, the Bank argues that the public rights doctrine is not restricted to controversies over public rights, but may be applied more loosely to controversies "involving " public rights. To a limited extent we agree. Our difference with the Bank's position is that we believe that if a party is going to be deprived of as fundamental a constitutional right as a jury trial, the controversy must be inextricably intertwined with a public right; the "involvement" may not be casual or vague.
 
 
 31
 The Supreme Court has not spoken extensively on the scope of the public rights doctrine. However, in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court allowed that if Congress possessed the power to create a statutory right, it also had the discretion "to create presumptions, or assign burdens of proof, or prescribe remedies." Id. at 83, 102 S.Ct. at 2877. These innocuous procedural matters, which are the only matters mentioned by the Court, are obviously necessary to the resolution of a dispute over the statutory public right and are certainly inextricably intertwined with it. Indeed, when Congress tried to go further and assign all contract and tort claims arising under Chapter 11 of the Bankruptcy Act of 1978 (the Act) or related to cases under Chapter 11 of the Act, the Court held that this assignment violated Article III of the Constitution.[10] Id. at 87, 102 S.Ct. at 2880.
 
 
 32
 Justice Brennan in Granfinanciera did not expound on how "involved" with public rights a controversy must be to be triable without a jury. Indeed, he consistently spoke in terms of statutory rights and was careful not to expand the scope beyond congressionally created, "novel" rights. However, he did find that actions such as fraudulent conveyance suits which "arise out of" bankruptcy proceedings were nonetheless private rights and beyond the scope of the public rights exception. 492 U.S. at 56, 109 S.Ct. at 2797. Thus, a more formal, necessary relationship to a public right is required.
 
 
 33
 We do not believe that the Trustee's action here bears a close nexus to any statutory public right. Indeed, his state law causes of action "are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings." 492 U.S. at 56, 109 S.Ct. at 2797. His suit is aimed at enhancing the bankruptcy estate and does not involve any other creditor's rights or the relationship among the creditors as a group or between the debtor and another creditor. The suit seeks compensation for damage done. It has nothing to do with the essence of the bankruptcy regulatory scheme of allowing or reordering claims.
 
 
 34
 CNB contends, however, that because these " 'seemingly "private" right[s]' " arose post-petition, they bear on the administration of the estate and are " 'so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.' " 492 U.S. at 54, 109 S.Ct. at 2796 (quoting Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 593-94, 105 S.Ct. 3325, 3339, 87 L.Ed.2d 409 (1985)). We have recently held, however, that " 'in an ordinary tort action ... the right of trial by jury is guaranteed by the Constitution' " even when the cause of action arises entirely while the bankruptcy proceedings are in progress. In re Ben Cooper, Inc., 896 F.2d 1394, 1402 (2d Cir.1990) (quoting United States v. Fotopulos, 180 F.2d 631, 634 (9th Cir.1950)), vacated on other grounds, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), reinstated, 924 F.2d 36 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). Although the tort action in Cooper was litigated between the debtor and a non-creditor insurance company, it arose out of negotiations over a policy that was required by the plan of reorganization. The administration of the estate was implicated in that case to the same degree and in the same vague and unconvincing way as it is in this case.
 
 
 35
 The Trustee's action is simply not integrally related to any substantive bankruptcy provisions and the public regulatory scheme here will not be hampered by a jury trial. The power of the bankruptcy court to readjust debtor-creditor relations and reorder creditor claims equitably and completely will not be diminished if this action is tried before a jury. Although it may be more expeditious to eschew a separate jury trial, such concerns have little weight when balanced against a constitutional guarantee. For these reasons we conclude that the Trustee's action involves private rights and should be tried before a jury, if that is the Trustee's choice.
 
 IV. Equitable Subordination
 
 36
 CNB asserts that the Trustee eventually plans to seek equitable subordination of CNB's claim under 11 U.S.C. § 510(c). CNB cites no evidence of this and we have found none in the record. Nonetheless, we do not believe that the Trustee should be permitted to try his contract and tort claims before a jury and then use the results in a subsequent equitable subordination proceeding. Because we are reluctant to issue an opinion that may be deemed advisory, we merely assume here that the Trustee has waived his right subsequently to seek equitable subordination of CNB's claim. Of course, we make no such assumption if the Trustee decides not to exercise his right to a jury trial.
 
 CONCLUSION
 
 37
 For all of the reasons presented above we affirm the judgment of the district court. We assume that the Trustee will refrain from subsequently attempting to equitably subordinate CNB's claim on the basis of any alleged misconduct litigated before a jury, and that in effect he has waived his right to do so. Finally, although the parties have not asked us to rule on where a jury trial may be conducted, we note that this Court has held that neither the Constitution nor any statute bars the bankruptcy court from conducting jury trials. In re Ben Cooper, Inc., 896 F.2d at 1402-04. We do not decide, however, whether the jury trial should be conducted in that court.
 
 OAKES, Circuit Judge, dissenting:
 
 38
 I must respectfully dissent on two grounds.
 
 
 39
 First, unlike the majority, I find the conduct here to be related to the bankruptcy proceeding. The underlying conduct which the Chapter 7 trustee alleges to be wrongful is that of a creditor occurring during Chapter 11 proceedings and involving--intimately, in my view--the administration of the Chapter 11 proceedings by the debtor-in-possession, with whose Chapter 11 affairs the creditor is alleged in the trustee's complaint to have unlawfully and improperly interfered. As such, far from being conduct "independent of and outside the reach of the bankruptcy process" in the majority's words, much less "quintessentially [a] suit[ ] at common law" in the words of Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 56, 109 S.Ct. 2782, 2797, 106 L.Ed.2d 26 (1989), the alleged wrongful conduct is "integrally related," id. at 60, 109 S.Ct. at 2800, to those Chapter 11 proceedings which, as the Supreme Court puts it, involve by definition "the reformation of debtor-creditor relations...." Id. Put another way, the complaint of the Chapter 7 trustee here, as found by the bankruptcy court and the district court, is that the creditor bank recommended the filing of the Chapter 11 proceedings in the first instance; insisted that certain incompetent and self-seeking individuals remain in control of the debtor's business with a resultant waste of the debtor's assets (primarily by way of failure to provide for appropriate flood insurance); kept these individuals in control by threatening to terminate Chapter 11 financing (woe unto those who hereafter engage in such financing); sought to have its favored individuals' outside corporation acquire the debtor's assets by way of a reorganization requiring court approval; and misused court-approved financing to satisfy its (the creditor's) pre-petition debt. To me, all of this conduct "intimately" relates to the Chapter 11 proceedings and their administration by the debtor in possession or supervision thereof by the bankruptcy court. At bottom, therefore, this case falls on the equity side of the dividing line and, thus, in my view, no right to jury trial by trustee or creditor is involved. My reasoning does not depend on the fact that a proof of claim was filed by the creditor before the complaint by the trustee was filed and that any recovery by the trustee would no doubt offset the creditor's claim, possibly bringing into play considerations of Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam ) and Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).[1]
 
 
 40
 The second point of my dissent is more general in nature. It stems not just from the posture of this case, but from the effects of another decision in this court, In re Ben Cooper, Inc., 896 F.2d 1394 (2d Cir.) ("Ben Cooper I" ) vacated, Insurance Co. of Pennsylvania v. Ben Cooper, Inc., 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) (on jurisdictional grounds), on remand, In re Ben Cooper, Inc., 924 F.2d 36 (2d Cir.1991) ("Ben Cooper II ") (proper jurisdiction found, original opinion reinstated), which left open a critical question. The problem lying in wait for us, since the panel majority has determined that a jury trial is required by the Seventh Amendment, is the following: before whom is the trial to be held--an Article I bankruptcy judge or an Article III district court judge? This question was left open in Granfinanciera, 492 U.S. at 64, 109 S.Ct. at 2802. It was dealt with in Ben Cooper I where the court said that bankruptcy courts have statutory authority to conduct jury trials in certain proceedings, 896 F.2d at 1402-03 (re validity of post-petition insurance policy), and that such a grant of authority by Congress does not violate the constitutional demands of either the Seventh Amendment, id. at 1403, or Article III, id. at 1403-04.[2]
 
 
 41
 Our court's Ben Cooper I decision in this respect has not met with approval either in the courts or among the commentators. The Eighth Circuit held in In re United Missouri Bank, N.A., 901 F.2d 1449 (8th Cir.1990) that Congress had not conferred authority upon the bankruptcy courts to try jury trials and declined to reach the constitutional issues. The Tenth Circuit with both United Missouri Bank and Ben Cooper I before it followed the former in In re Kaiser Steel Corp., 911 F.2d 380, 389 (10th Cir.1990). In conformity with the Eighth and Tenth Circuits, an Arkansas Law Review commentator has concluded that:
 
 
 42
 Congress did not expressly confer upon bankruptcy judges the authority to conduct jury trials. Because jury trial authority could raise constitutional questions and because it is not necessary for the operation of the bankruptcy system, it should not be implied by the courts. If authority does exist, it is unlikely that jury trials conducted by a bankruptcy judge would meet the requirements of article III.
 
 
 43
 Note, In re Ben Cooper, Inc.: Time to Build Jury Boxes in Bankruptcy Courtrooms?, 44 Ark.L.Rev. 697, 729 (1991).
 
 
 44
 Evident from Douglas G. Baird's critique, The Seventh Amendment and Jury Trials in Bankruptcy, 1989 Sup.Ct.Rev. 261 (1989), it is clear that serious questions are here involved, warranting Supreme Court, en banc or even Congressional review.
 
 
 45
 Where is this issue left by today's decision? The bankruptcy court here simply said, in its order dated September 6, 1989, "Both parties agree that the bankruptcy court has no authority to conduct a jury trial so that that issue, expressly left undecided by Granfinanciera, is not before me for a ruling," (A. 42), and directed the parties "to take appropriate steps to remove the proceeding from the bankruptcy court." The district court, in its order of March 22, 1990, affirming the right to jury trial in light of "the fact that this adversary proceeding was commenced in 1987 and the substantial potential for further delay if the case is to be removed from the bankruptcy court to be tried in an as yet undetermined forum," remanded the case to the bankruptcy court for consideration in light of Ben Cooper of the issue whether it can conduct a jury trial on the instant claims.
 
 
 46
 Instead of denying a § 1292(b) certification at that point (since there was no district court determination as to which court would conduct the jury trial) on the ground that there would be no material advancement of the ultimate termination of the litigation, this court determined that it lacked jurisdiction to consider the petition. Germain v. Connecticut Nat. Bank, 926 F.2d 191 (2d Cir.1991). This judgment was reversed by the Supreme Court and the case remanded, --- U.S. ----, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Our court then granted the § 1292(b) petition leaving the question still open. While we might have saved the period of time since argument by simply remanding on the basis of an improvident grant, e.g., Slade v. Shearson, Hammill & Co., Inc., 517 F.2d 398 (2d Cir.1974); New York City Health & Hospitals Corp. v. Blum, 678 F.2d 392 (2d Cir.1982), we did not do so and the case now goes back three years after the district court order remanding to the bankruptcy court, for further findings on the key legal/constitutional issue. Presumably if the matter comes back to us on a § 1292(b) petition, before trial or after, we may get around to determining this issue.
 
 
 47
 I would decide it now, for the guidance of the district court and the bankruptcy court in the interests of promoting the termination of this litigation, now almost a decade after the underlying facts and six years from the trustee's complaint. The general creditors, whose assets are being eaten by the litigation, deserve that much. I therefore also dissent from so much of the opinion as remands without deciding the issue as to which court should conduct the jury trial it erroneously, in my opinion, orders.
 
 
 48
 So saying, I fully recognize that ordinarily the grant of a § 1292(b) certification would certainly not require consideration of matters not yet ruled upon by the district court (much less remanded by a district court to a bankruptcy court), in the interests of avoiding opinions that are advisory only. See, e.g., Stern v. United States Gypsum Inc., 547 F.2d 1329, 1333-34 (7th Cir.), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). But as Judge Friendly put it in Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 994-95 (2d Cir.), cert. denied, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), the reviewing court's powers "are not so narrowly circumscribed as to preclude consideration and resolution of questions other than those specifically regarded as controlling by the district court at the time of its certification order." See also Slade v. Shearson, Hammill & Co., 517 F.2d at 400.
 
 
 49
 Further so saying, I would have no hesitation in stating my views as to whether bankruptcy courts have to build jury boxes in their courtrooms. Those views, if adopted, would probably require an en banc in light of Ben Cooper I. But to elaborate upon them here, in a dissent, seems about as advisory and futile an exercise as could be imagined. Suffice it to say that, having picked up this tiger of a case by the tail and given the tail a tweak to boot, this court should not simply dump the tiger back on its district/bankruptcy court keepers without a whisker of guidance. At least where, as here, the tiger has gobbled up more than its share of judicial and financial nourishment.
 
 
 
 [1]
 The sixth cause of action, alleging violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., was dismissed by the district court on June 23, 1988
 
 
 [2]
 Under 28 U.S.C. § 157(b)(1) and (c)(1), if a proceeding is "core" the bankruptcy judge may enter final judgments and orders; otherwise his role is limited to making proposed findings of fact and conclusions of law
 
 
 [3]
 This case has already taken a tortuous procedural journey. We decided in Germain v. Connecticut Nat'l Bank, 926 F.2d 191 (2d Cir.1991), that we did not have appellate jurisdiction to entertain the Bank's interlocutory appeal, but that ruling was reversed by the Supreme Court. --- U.S. ----, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Before the Supreme Court's decision came down we decided in Germain v. Connecticut Nat'l Bank, 930 F.2d 1038 (2d Cir.1991), that the Bank also could not appeal pursuant to the collateral order doctrine. That ruling became moot once the Supreme Court determined that we had jurisdiction over the interlocutory appeal
 
 
 [4]
 The Bank, in a letter sent pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, has directed our attention to a recent Fifth Circuit decision, In re Baudoin, 981 F.2d 736 (5th Cir.1993). The Baudoin Court held that a trustee's lender liability action against a creditor constituted a counterclaim against that creditor's proof of claim. Because counterclaims are core proceedings under 28 U.S.C. § 157(b)(2)(C), the trustee could have litigated his claims in bankruptcy court and was therefore barred by res judicata from litigating these claims after discharge
 Even if we were to accept this analysis, it would have no bearing on our disposition. While Congress' decision to call a particular claim "core" may be relevant for res judicata purposes, it has little relevance for purposes of the constitutional guaranty to a jury trial.
 
 
 [5]
 This point was made explicitly in Katchen although the statutory provision invoked there is § 57g of the Bankruptcy Act, the predecessor to the Bankruptcy Code. See 382 U.S. at 330 & n. 5
 
 
 [6]
 Granfinanciera is not to the contrary. In that case, the Court did not need to reach the question of whether a fraudulent conveyance action would have an effect on the allowance of the creditor's claim because the creditor in question had not filed a proof of claim. See 492 U.S. at 58, 109 S.Ct. at 2798
 
 
 [7]
 CNB contends that the Trustee plans to seek equitable subordination of the Bank's claim. We cannot predict the future and there is no current evidence to support CNB's contention. We therefore decline to consider it in this context
 
 
 [8]
 The Chapter 7 trustee is an officer of the court and owes a fiduciary duty both to the debtor and to the creditors as a group. See, e.g., In re Thompson, 965 F.2d 1136, 1146 (1st Cir.1992). The creditor acts in his own interest and in general owes no duty to any other party. This distinction suggests that the trustee should be accorded greater leeway in pursuing its interest than any individual creditor and the Bankruptcy Code is of course replete with provisions to this effect. The automatic stay, 11 U.S.C. § 362, for example, works in only one direction. We do not agree, therefore, that each time a creditor is deemed to have waived the right to a jury trial, the same presumption must hold for the trustee
 
 
 [9]
 The Bank, in its 28(j) letter, also directs us to a recent bankruptcy court case, In re Frost, 145 B.R. 878 (Bkrtcy.W.D.Mich.1992). In Frost, the bankruptcy court held that the debtor's claim of malpractice against its former attorney constituted an "objection[ ] arising against" the debt owed to the attorney for uncollected fees. Id. at 883. The court denied the debtor's request for a jury trial
 To the extent that the court is suggesting that the debtor was essentially objecting to the allowance of the attorney's claim and that the debtor's success meant the disallowance of the attorney's claim, we agree that the debtor's objection was part of the claims-allowance process. As we have stated in section I-B, however, the Trustee's lender liability claims are not analogous. The Trustee's success does not result in the disallowance of the Bank's claim, but rather augments the value of the estate. Therefore, we do not believe that Frost provides support for the Bank's position.
 
 
 [10]
 While the Marathon case addressed Congress' power under Article III to assign jurisdiction over newly created statutory rights, the essence of the Court's argument implicitly focused on the scope of the public rights doctrine
 
 
 [1]
 The Seventh Circuit has also since held that a trustee or debtor-in-possession has no right to demand a jury trial on a claim filed by a creditor. Matter of Hallahan, 936 F.2d 1496 (7th Cir.1991); but cf. In re Jensen, 946 F.2d 369 (5th Cir.1991) (jury trial on pre-petition, common law action preserved after bankruptcy). A number of bankruptcy courts have agreed at least in result with the Seventh Circuit, and one need not agree with its waiver reasoning similarly to agree. See e.g., In re Barral, 139 B.R. 789, 790 (Bankr.S.D.N.Y.1992); In re Haile Co., 132 B.R. 979, 980-81 (Bankr.S.D.Ga.1991); In re McLaren, 129 B.R. 480, 483-84 (Bankr.N.D.Ohio 1991); In re Malkove & Womack, Inc., 122 B.R. 444, 445 (Bankr.N.D.Ala.1990); In re Johnson, 110 B.R. 433, 434 (Bankr.W.D.Mo.1990)
 
 
 [2]
 This aspect of the decision was not referred to in the post-Supreme Court Ben Cooper opinion, 924 F.2d 36 (Ben Cooper II)