In re 131 LIQUIDATING CORP. fka/fdba Alexander Doll Company, Inc., Debtor.

131 LIQUIDATING CORP. fka/fdba Alexander Doll Company, Inc., Debtor–Counterclaimant,

and

Jeffrey Chodorow, Linda Chodorow, Jack Polsenberg, Gerald Broker, and Sydel Smith, Third Party Plaintiffs,

v.

LaSALLE CAPITAL GROUP, INC., Charles S. Meyer, William V. Glastris, Jr., and Arthur Peisner, Defendants.

LaSALLE CAPITAL GROUP, INC., Counterplaintiff,

v.

Jeffrey CHODOROW and Ira Smith, Counterdefendants.

No. 97 CIV. 4641(MGC).

United States District Court, S.D. New York.

March 31, 1998.

As Amended June 5, 1998.

Altheimer & Gray by Robert J. Rubin, Chicago, IL, for Defendants and Counterplaintiff.

Law Offices of David H. Latham by David H. Latham, Chicago, IL, for Defendants and Counterplaintiff.

Tenzer Greenblatt, L.L.P. by Andrew B. Eckstein, Barbie D. Lieber, New York City, for Defendants and Counterplaintiff.

Burns, Handler & Burns L.L.P., by Arthur Handler, Robert S. Goodman, New York City, for Third–Party Plaintiffs and Counterdefendants.

Fisher, Fisher & Berger by Laurence J. Kaiser, New York City, for Debtor–Counterclaimant.

## OPINION

CEDARBAUM, District Judge.

LaSalle Capital Group, Inc., and Charles Meyer, William Glastris, and Arthur Peisner (hereafter the "individual defendants") move pursuant to 28 U.S.C. § 157(d) for an order withdrawing the reference of Adversary Proceeding No. 96–8130A. The claims which movants seek to withdraw are LaSalle's proof of claim against 131 Liquidating Corp. (hereafter "Alexander"); Alexander's counterclaims; the claims of Jeffrey Chodorow, Linda Chodorow, Jack Polsenberg, Gerald Broker, and Sydel Smith (hereafter "Alexander shareholders") against LaSalle and the individual defendants; and, LaSalle's claim against Jeffrey Chodorow and Ira Smith. For the reasons set forth below the motion to withdraw the reference is granted.

*Procedural History*

In September of 1994, Alexander was in debt to National Westminster Bank and negotiated an agreement with the bank under which it could satisfy its debt by paying the bank $12.5 million by December of 1994. Alexander subsequently negotiated an extension of this deadline to March 27, 1995.

On January 26, 1995, Alexander and LaSalle executed a letter of intent memorializing a proposed refinancing of Alexander by LaSalle. It is alleged that under the terms of the letter of intent, Alexander agreed to negotiate for refinancing exclusively with LaSalle so long as LaSalle met certain conditions to move the negotiations forward. It is further alleged that on March 11, 1995, Alexander informed LaSalle that it was terminating negotiations with LaSalle.

On April 14, 1995, Alexander filed a voluntary petition in the bankruptcy court for the Southern District of New York for relief under Chapter 11 of the bankruptcy code.

On August 29, 1995, LaSalle filed a $4.3 million proof of claim in the bankruptcy court. LaSalle alleged that Alexander had breached the letter of intent by negotiating with other parties. Alexander filed an objection to the proof of claim on November 20, 1995. As amended on December 4, 1996, the objection asserted the following counterclaims: breach of contract against LaSalle; fraud against LaSalle; and, fraud against the individual defendants.

Also in the objection, the Alexander shareholders asserted claims as third party plaintiffs. The Alexander shareholders asserted that they were third party beneficiaries of the letter of intent and claimed breach of contract against LaSalle, fraud against LaSalle, and fraud against the individual defendants.

On January 12, 1996, in the Northern District of Illinois, LaSalle filed a fraud action arising from the same letter of intent against Jeffrey Chodorow and Ira Smith, the vice chairman of Alexander. On March 15, 1996, that action was dismissed without prejudice. On January 24, 1997, LaSalle refiled the claim in the bankruptcy court in the form of

a counterclaim against Jeffrey Chodorow and Smith.

*Applicable Law*

District courts have original jurisdiction of all civil proceedings arising under Title 11 of the United States Code, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). In this district, by standing order under 28 U.S.C. § 157(a), the district court refers all cases "arising under," "arising in," or "related to" Title 11 proceedings to the bankruptcy court. *See* Order of Acting Chief Judge Robert J. Ward dated July 10, 1984.

■ Proceedings referred to the bankruptcy court are classified as either core or non-core. 28 U.S.C. § 157(b). Section 157(b)(2) contains a list of core proceedings, but this list is not exhaustive. *See* 28 U.S.C. § 157(b)(2). A determination of whether a proceeding is core depends on the nature of the proceeding. *In re Best Products Co.*, 68 F.3d 26, 31 (2d Cir.1995). The restructuring of debtor-creditor relations is at the core of federal bankruptcy power. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *see also Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y.1996) (core proceeding is one which invokes a substantive right provided by Title 11, whereas a non-core proceeding involves disputes over rights that have little or no relation to the bankruptcy code, that do not arise under the federal bankruptcy law, and that would exist in the absence of a bankruptcy case).

■ With respect to core matters, the bankruptcy court may issue final orders and judgments and may conduct jury trials. *See* 28 U .S.C. § 157(b)(1); *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402 (2d Cir.1990), *vacated and remanded*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated*, 924 F.2d 36 (2d Cir.1991), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). With respect to non-core matters, the court may not issue final orders. 28 U.S.C. § 157(c)(1). The bankruptcy court may not conduct jury trials of non-core matters. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101

(2d Cir.1993), *cert. dismissed*, 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

■ Upon its own motion or the motion of a party, the district court may, for cause shown, withdraw the reference to the bankruptcy court. 28 U.S.C. § 157(d). A district court considering whether to withdraw the reference should first determine whether the claim is core or non-core. Once this determination is made, the court should weigh questions of the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors. *Orion* 4 F.3d at 1101. If a case is non-core and a jury demand has been filed, the district court may find that the inability of the bankruptcy court to hold the trial itself constitutes cause to withdraw the reference. *Orion*, 4 F.3d at 1101.

*Discussion*

■ There is no dispute in this case that, since jury trials have been demanded, any non-core matter must be tried in the district court. (Tr. 2–3.) Both sides also agree that all the claims arise from the same letter of intent and should be tried together. (LaSalle Mem. at 13–15; Alexander Mem. at 28.) Therefore, the only issue on this motion is whether any of the claims is non-core.

The claim that is most obviously non-core is the Alexander shareholders' fraud claim against the individual defendants. This claim is not within the definition of core proceedings in § 157(b)(2) and does not invoke a substantive right provided by Title 11. The claim arises under state common law and involves pre-petition conduct by parties who have no claim against the debtor. *See Wechsler v. Squadron*, 201 B.R. at 639; *see also In re CIS Corp.*, 172 B.R. 748, 755 (S.D.N.Y.1994) (core proceeding is one which invokes a substantive right provided by Title 11 or that, by its nature, could arise only in the context of a bankruptcy case).

The Alexander shareholders argue that this claim is core because it arises out of the same transaction as core claims. (Alexander Mem. 20, 24–25.) This position ignores the fact that the suit by the Alexander share-

holders is independent of the suit by Alexander itself. Under New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring an action. *Ceribelli v. Elghanayan,* 990 F.2d 62, 63 (2d Cir.1993). As *Ceribelli* explains, the Alexander shareholders have standing to sue because they allegedly suffered a separate and distinct injury from Alexander. *See Ceribelli,* 990 F.2d at 62–63. The district court has "related to" jurisdiction over the claim within the meaning of 28 U.S.C. § 1334(b) because the Alexander shareholders' fraud claim against the individual defendants arises out of the same transaction as LaSalle's claim against Alexander. The Alexander shareholders cite no authority for their contention that this relationship renders the claim core.

Alternatively, the Alexander shareholders argue that the claim "affects" the adjustment of the debtor-creditor relationship, and is thus core under § 157(b)(2)(*O*). (Alexander Mem. at 25.) Section 157(b)(2)(*O*) provides that proceedings "affecting ... the adjustment of the debtor-creditor ... relationship" are core. 28 U.S.C. § 157(b)(2)(*O*). The Alexander shareholders cite no supporting authority for their argument and do not explain how resolution of the claim would affect the debtor-creditor relationship.

Finally, relying on *Germain v. Connecticut Nat. Bank,* 988 F.2d 1323 (2d Cir.1993), the Alexander shareholders argue that the claim is core because it is "integrally and inextricably related" to the core claim against Alexander asserted by LaSalle in its proof of claim filed in the bankruptcy proceeding. (Alexander Mem. at 23.)

In *Germain,* the debtor's trustee commenced a state action alleging tortious interference and related claims against a creditor that had filed a proof of claim in the bankruptcy court. The creditor removed the state case to bankruptcy court, and the debtor's trustee then requested a jury trial. After determining that the action was a core proceeding, the district court held that the trustee was entitled to a jury trial. The creditor appealed, thereby presenting the issue of whether the trustee would be permit-

ted a jury trial on the state law claims. *Germain,* 988 F.2d at 1325–26. One issue in *Germain* was whether the trustee's state law claims against the creditor were so "integrally related" to debtor-creditor and creditor-creditor relations as to transform what would otherwise have been a legal action into an equitable action, and, thereby, eliminate the trustee's right to a jury trial. *Germain,* 988 F.2d at 1329. The Court held that the trustee's state law action was not part of the bankruptcy claims-allowance process, was not integral to the reordering of relations among the parties, and thus remained legal in character. *Germain,* 988 F.2d at 1329.

The issue of whether the proceeding was core or non-core was not addressed by the Court, except to the extent of noting that the issue had already been decided. *Germain,* 988 F.2d at 1325–26. The "integrally related" language on which the Alexander shareholders rely concerned whether the claims at issue were "integrally related" to the broader equitable controversy so as to render the core claims equitable rather than legal. The "integrally related" language did not concern whether one claim was "integrally related" to another claim, nor whether any claim at issue was core. *See Germain,* 988 F.2d at 1329. In *Germain,* the district court held that the claims were core because the creditor's allegedly tortious conduct occurred after the debtor had filed for bankruptcy protection. *See In re O'Sullivan's Fuel Oil Co.,* 88 B.R. 17, 20–21 (D.Conn.1988) ("the actions of the banks which allegedly caused the destruction of the debtor's business occurred postpetition") (adopting recommended decision of magistrate judge). The conduct charged in the claims at issue on this motion is entirely pre-petition.

The Alexander shareholders' misreading of *Germain* also helps to explain their related argument that "to us, the question of whether or not those additional joined claims are core is synonymous with the question of whether they're jury-trial eligible or of right." (Tr. 3.) *Germain* rejects any argument that a determination that a claim is core also determines the right to a jury trial. *See Germain,* 988 F.2d at 1326 ("the designation of an action as 'core' does not control

whether or not the action may be tried before a jury"). To the extent that the Alexander shareholders are arguing otherwise, they are incorrect.

### Conclusion

At least one of the claims at issue is non-core and must be tried before a jury in this Court. Since all the claims arise from the same letter of intent and all parties agree that the core and non-core claims should be tried together, the reference is withdrawn as to all claims.