In re RICKEL & ASSOCIATES, INC., Reorganized Debtor.

Rickel & Associates, Inc., Robert Rickel, and Marvin Numeroff, Plaintiffs,

v.

Gregg Smith, Elliot Smith and Wireless Acquisition Partners, LLC, Defendants and Third Party Plaintiffs,

v.

Kenneth Rickel, Third Party Defendant.

Bankruptcy No. 98 B 47203(SMB). Adversary No. 01–2441.

United States Bankruptcy Court, S.D. New York.

Feb. 22, 2005.

Kelley Drye & Warren LLP, Thomas B. Kinzler, James S. Carr, Robert L. Lehane, of counsel, New York City, for Plaintiffs Robert Rickel and Marvin Numeroff.

Olshan Grundman Frome Rosenzweig & Wolosky LLP, Thomas J. Fleming, Kenneth J. Rubinstein, Robert Laplaca, of counsel, New York City, for Defendant Gregg Smith.

## MEMORANDUM DECISION DENYING MOTION TO STRIKE JURY DEMAND

STUART M. BERNSTEIN, Chief Judge.

In this hotly contested adversary proceeding, one claim remains. The plaintiff creditors, Robert Rickel and Marvin Numeroff, seek to recover damages from Gregg Smith ("Gregg"), a member of the Official Committee of Unsecured Creditors (the "Committee"), alleging that he breached his fiduciary duties. Gregg demanded a jury trial, and the plaintiffs have moved to strike the demand. For the reasons that follow, the Court concludes that Gregg is entitled to a jury trial, and the motion is, therefore, denied.

## BACKGROUND

The facts are discussed at length in *Rickel & Assocs., Inc. v. Smith (In re*

*Rickel & Assocs., Inc.*), 272 B.R. 74 (Bankr.S.D.N.Y.2002)("*Rickel I*") and the Court's *Memorandum Decision Granting Defendants' Motions for Summary Judgment,* dated Aug. 19, 2004 (ECF Doc. # 66)("*Rickel II*"), familiarity with which is assumed. In brief, the debtor confirmed a liquidating plan that paid all non-subordinated creditors in full, with interest. The few creditors holding subordinated debt, a group that included Robert Rickel and Numeroff, were not paid in full. At the time of confirmation, the estate still owned certain securities that needed to be liquidated, and both the debtor and the Committee were actively involved in the sale efforts.

The debtor eventually entered into a contract to sell the securities to the defendant Wireless Acquisition Partners, LLC ("WAP"). The defendants, Gregg and his father, Elliot Smith, were members of WAP, and as noted, Gregg was also a member of the Committee. Following an auction conducted by the Court, at which one other party bid,[1] the Court approved the sale to WAP for $3.525 million.

The debtor filed this adversary proceeding against WAP and the Smiths on February 26, 2001. In essence, the complaint asserted that the securities were actually worth $20 million, but Greg misrepresented their value to the debtor and the Committee. Robert Rickel and Numeroff joined as plaintiffs. In the Sixth Claim for Relief, they alleged that Gregg "abused his position and breached his fiduciary duties" to the Committee and the other creditors, and demanded damages. (Complaint, ¶ 97.)

In *Rickel I*, the Court dismissed all of the individual plaintiffs' causes of action except for the breach of fiduciary duty claim. The opinion noted that the Committee and its members owed fiduciary duties to the class they represented, but not to any individual creditors. *Rickel I,* 272 B.R. at 99. Nevertheless, the only creditors who had not been paid in full were the individual plaintiffs and the Smiths. The Court concluded that it would treat the Sixth Claim as having been asserted on behalf of the remaining "innocent" creditors; no one else would assert the claim and a possible wrongdoer might otherwise go free. *Id.* Lastly, the Court dismissed all of the debtor's claims except for the fraud and unjust enrichment claims.

In *Rickel II*, the Court granted summary judgment dismissing the balance of the debtor's claims, but inadvertently failed to rule on the breach of fiduciary duty claim. After granting reconsideration, the Court denied the motion for summary judgment dismissing the breach of fiduciary duty claim, and this is the only remaining claim in the case.

As a result, the bankruptcy process is at an end. The debtor has no further rights, and there will not be any further distributions in the case or under the Plan. Instead, the successful prosecution of the Sixth Claim for Relief will result, at most, in the payment of damages to the subordinated creditors outside of the bankruptcy plan process or the case.

Prior to the decision in *Rickel II*, all of the plaintiffs moved to strike the defendants' jury demand. The motion dealt in large part with claims that were subsequently dismissed in *Rickel II*. As a result, it is unnecessary to consider many of the arguments.[2] Focusing, then, on the re-

---

1. Robert Rickel was a member of the unsuccessful bidding group.

2. No one has suggested that the dismissed claims are relevant in determining the right to a jury trial on the remaining claim.

maining plaintiffs and their single claim, the plaintiffs assert that Gregg does not have a right to a jury trial because the breach of fiduciary duty claim arose under bankruptcy law and out of a bankruptcy sale in which Gregg voluntarily participated, the claim is integrally related to the bankruptcy process, and finally, Gregg filed a proof of claim in this case. Gregg counters that the breach of fiduciary duty claim is legal in nature, seeks money damages, and does not implicate the claims resolution process. In addition, he argues that he did not waive his right to a jury trial by participating in the bankruptcy court auction.

## DISCUSSION

### A. Introduction

The Seventh Amendment to the United States Constitution guarantees the right to trial by jury "[i]n suits at common law, where the value in controversy shall exceed twenty dollars." "[T]he thrust of the Amendment was to preserve the right to jury trial as it existed in 1791." *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)(quoting *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830)).

■ When faced with a dispute involving the right to a jury trial, a court must engage in a two step analysis that focuses on the nature of the issues and the remedy sought. First, the Court must compare the action to the 18th century actions brought in the English courts prior to the merger of law and equity. *Chauffeurs, Teamsters & Helpers v. Terry,* 494 U.S. 558, 565, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990); *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. 2782; *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). Second, it must examine the remedy sought to determine

whether it is legal or equitable in nature. *Chauffeurs, Teamsters & Helpers,* 494 U.S. at 565, 110 S.Ct. 1339; *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. 2782; *Tull,* 481 U.S. at 417–18, 107 S.Ct. 1831. The second inquiry is the more important one. *Chauffeurs, Teamsters & Helpers,* 494 U.S. at 565, 110 S.Ct. 1339; *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. 2782; *Tull,* 481 U.S. at 421, 107 S.Ct. 1831. The characterization of a claim as legal or equitable involves a question of federal law, even when the claim is based on a state-created right. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963).

### B. The Characterization of the Claim

■ "Actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity'—carrying with them no right to trial by jury." *In re Evangelist,* 760 F.2d 27, 29 (1st Cir.1985); accord *Pereira v. Cogan,* No. 00 Civ. 619(RWS), 2002 WL 989460, at *3 (S.D.N.Y. May 10, 2002); *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.,* No. 98 Civ. 6907(MBM), 2001 WL 863552, at *4 (S.D.N.Y. July 30, 2001); see *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)("[A]t common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust."); *Bona v. Barasch,* No. 01 Civ. 2289(MBM), 2003 WL 1395932, at *35 (S.D.N.Y. Mar. 20, 2003)(under historical analysis, suit for breach of fiduciary duty is equitable). This factor weighs against a right to a jury trial.

■ On the other hand, the individual plaintiffs seek a legal remedy. Although monetary relief need not always be *legal* relief, see *Chauffeurs, Teamsters & Helpers,* 494 U.S. at 570, 110 S.Ct. 1339; *Pereira,* 2002 WL 989460, at *4, the plaintiffs have not argued otherwise. Accordingly,

the second (and more important) factor weighs in favor of a jury trial, and would ordinarily call for the denial of the motion to strike. *See Bona*, 2003 WL 1395932, at *35 (denying motion to strike jury demand in money damage action brought against ERISA trustees for breach of fiduciary duty).

## C. The Effect of Bankruptcy on the Characterization

██ The plaintiffs nevertheless urge that the proceeding is equitable because of its origins and relation to the bankruptcy case. They also emphasize that Gregg voluntarily submitted himself to the equitable jurisdiction of the Court by voluntarily participating in the bankruptcy sale and by filing a proof of claim.

Similar arguments were expressly or impliedly rejected in *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323 (2d Cir.1993). There, the chapter 7 trustee brought lender liability claims against the debtor's lender (the "Bank") based primarily on its post-petition wrongdoing. The five causes of action in the complaint sounded in common law tort or breach of contract. The trustee demanded a jury trial, and the defendant opposed the demand. The bankruptcy court and district courts agreed with the trustee, and the Bank appealed to the Second Circuit Court of Appeals.

The Court ruled that the trustee's claims were historically tried in the law courts, and he sought only legal relief. *Id.* at 1328. Consequently, they were legal, and ordinarily triable by a jury. The connection between the claims and the bankruptcy case did not magically convert the legal claims into equitable claims. *Id.* at 1329 ("[A]ctions that are normally legal cannot be 'magically converted into equitable issues' merely because they arise out of equitable proceedings.") (quoting *Ross v.*

*Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970)). Furthermore, the designation of the proceedings as "core" was entitled to "minimal weight" because neither Congress nor the courts can deprive a litigant of his constitutional right to a jury trial based on the label they attach to his claim. *Id.* at 1327.

██ Instead, a bankruptcy proceeding will "transform" a legal claim into an equitable claim if the determination of the claim implicates the claims resolution process, *i.e.,* affects the allowance, disallowance or priority of the claim. *Id.* at 1327; *accord Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990)(no right to jury trial where creditor filed claim and trustee commenced a preference action). The dispute in *Germain* failed to satisfy this limitation on the right to trial by jury. Although the Bank had filed a proof of claim, the resolution of the trustee's action "is not required in order to determine whether to allow [the Bank's] claim as a creditor in the bankruptcy proceeding." *Germain*, 988 F.2d at 1327. In addition, the Court emphasized that the trustee's claims were based on the common law, and did not charge a violation of any provisions of the Bankruptcy Code. *Id.* at 1328. ("[W]hile some Bankruptcy Code provisions may be implicated, the form, substance and spirit of the complaint are grounded in lender liability.")

Here, the plaintiffs' position is foreclosed by the holding in *Germain*. They seek money damages, and the determination of the breach of fiduciary duty claim will not affect the allowability or priority of Gregg's proof of claim in the bankruptcy case. Furthermore, while the breach of fiduciary duty claim arises out of a bankruptcy sale, and indeed, Gregg's fiduciary relationship and duties arise under the Bankruptcy Code, the plaintiffs do not contend that he violated any provision of the

Bankruptcy Code such as the provision dealing with collusive sales. *See* 11 U.S.C. § 363(n). Instead, they charge an ordinary breach of fiduciary duty. The scope of Gregg's duty of loyalty, the breach, if any, of that duty, and the extent of the damages resulting from a breach will be determined under non-bankruptcy law.[3]

■ Two related arguments raised expressly or implicitly by the plaintiffs were also dealt with in *Germain*. First, Gregg did not waive his right to trial by jury either by participating in the bankruptcy sale or filing a proof of claim. The *Germain* Court rejected an analogous argument with language equally applicable to the present dispute:

> It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy. We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.

*Id.* at 1329–30.

The current dispute is not vital to the bankruptcy process. The plaintiffs seek money damages outside of a distribution under the Plan. Gregg is not presumed to have waived his right to a jury trial simply because the claim arose in connection with a bankruptcy sale or because he filed a proof of claim.

Second, the parties' dispute does not involve "public rights." For the reasons already mentioned, it is "not integrally related to any substantive bankruptcy provisions," and "[t]he power of the bankruptcy court to readjust debtor-creditor relations and reorder creditor claims equitably and completely will not be diminished if this action is tried before a jury." *Id.* at 1332.

Accordingly, the motion to strike Gregg's jury demand is denied. The parties are directed to contact chambers to schedule a conference for the purpose of discussing further proceedings.

Settle order on notice.

---

**3.** As noted, the *Germain* Court emphasized that the trustee's claims did not allege violations of any provisions of the Bankruptcy Code, or seek bankruptcy relief. I do not read this to hold that a proceeding is automatically equitable in nature if it alleges a violation of a Bankruptcy Code provision but does not implicate the claims resolution process. In *Granfinanciera*, the trustee sued to avoid a fraudulent transfer under 11 U.S.C. § 548 and recover its value under § 550. *See* 492 U.S. at 36, 109 S.Ct. 2782. The Supreme Court nonetheless concluded that the dispute involved a private right, *id.* at 55, 109 S.Ct. 2782, and was triable by a jury. *Id.* at 64, 109 S.Ct. 2782.