**In re Marshall WEINSTEIN, Debtor.**

**M. Sobel, Inc.,**

**v.**

**Marshall Weinstein, Debtor–Defendant.**

**Bankruptcy No. 897–88481–288.**
**Adversary No. 898–8329–288.**

United States Bankruptcy Court,
E.D. New York.

Aug. 17, 1999.

568

Kalb Rosenfeld & Essig, Commack, NY, for Debtor.

Andrew M. Thaler, Thaler & Thaler, Westbury, NY, trustee.

REPORT AND RECOMMENDATION TO THE DISTRICT COURT TO WITHDRAW THE REFERENCE WITH RESPECT TO AN ADVERSARY PROCEEDING IN WHICH THE PLAINTIFF MADE A TIMELY AND PROPER DEMAND FOR A JURY TRIAL

STAN B. BERNSTEIN, Bankruptcy Judge.

### Issue

On October 15, 1998, the plaintiff, M. Sobel, Inc. (plaintiff), filed an amended complaint for a determination of nondis-

chargeability[1] under 11 U.S.C. § 523(a)(2)(A) and (2)(B)[2] against the debtor-defendant, Marshall Weinstein (debtor or defendant), for a debt incurred as a result of fraud. The plaintiff made a timely demand for a jury trial and moved to withdraw the reference from the Bankruptcy Court. Since the plaintiff is entitled to a jury trial on the state law issues of liability and damages, its motion to withdraw the reference to the District Court should be granted.

## Background

The plaintiff is a wholesale distributor of pharmaceuticals which supplied goods to IMSE Drug Corporation (IMSE), an owner and operator of a retail pharmacy. The debtor is an officer and the principal shareholder of IMSE, and he personally guaranteed IMSE's debts to the plaintiff.[3] The plaintiff delivered $109,017.63 worth of goods to IMSE, but was only paid $1,287.61. On December 19, 1997, the plaintiff obtained a judgment from state court against IMSE for $107,730.62, which remains unsatisfied.

The plaintiff alleges that the debtor knew that IMSE was unable to pay for the merchandise it was ordering over a six month period during which the debtor was planning to sell the business assets of IMSE under a bulk sale. The gravamen of the plaintiff's complaint is that the debtor had an affirmative duty to disclose its insolvent condition when it ordered goods from the plaintiff. Breach of that duty constitutes an implied false representation that IMSE was financially capable of paying for the goods. The plaintiff alleges that this implied false representation constitutes actual fraud so that the $107,730.62 debt is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. The debtor denies the plaintiff's allegations of fraud.

## Discussion

### A. Bifurcation of State Law Claims

Structurally, a complaint for nondischargeability operates at two levels of analysis and proof. At the foundational level, a complaint under § 523(a)(2)(A) is predicated upon a state law cause of action for fraud. Assuming the plaintiff prevails at this foundational level, it then proceeds to the next, secondary, and derivative level in which the bankruptcy court, in exercising its exclusive equitable jurisdiction, may enter an order or judgment excepting this particular, state-law based, claim from the scope of the debtor's bankruptcy discharge.[4]

---

1. "Nondischargeability" is an awkwardly phrased term of art in bankruptcy law. It means that if a judgment for damages is granted in favor of the plaintiff under § 523(a), then the liability under that judgment will not be affected by the entry of a general order discharging the debtor of all of his/her/its prepetition unsecured debts. Put more technically, but less intuitively, the § 523(a) judgment will be "excepted" from the scope of the general order of discharge. This is why we often speak of a § 523(a) complaint as seeking an exception from the discharge. In this limited sense, the § 523(a) judgment will not be discharged, i.e., is "nondischargeable."

2. A Memorandum Opinion Denying Defendant's Motion to Dismiss, issued on May 13, 1999, explains why the plaintiff failed to state a claim under § 523(a)(2)(B).

3. Although the debtor personally guaranteed the indebtedness and obligations of his corporation to the plaintiff, that is legally irrelevant in an adversary proceeding filed under 11 U.S.C. § 523(a)(2)(A). Any claim based upon a contractual undertaking such as a guaranty is discharged in the guarantor's chapter 7 petition. The plaintiff stumbles over this issue in its pleadings. Nevertheless, the logical inference from its complaint is that the debtor as the sole person in control of his wholly owned corporation should be estopped from pleading the affirmative defense of limited liability as a shareholder. Under New York law, an officer/shareholder in direct control of an operating corporation becomes personally liable for the fraudulent acts of the corporation. See *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 136–40 (2d Cir.1991).

4. The plaintiff could have filed a fraud complaint for damages on these same allegations in the New York Supreme Court against the debtor before this bankruptcy petition was filed.

Assuming that the state law claim for fraud and damages may be bifurcated from the equitable remedy of nondischargeability under the Bankruptcy Code, then under the doctrine of permission abstention, as encoded in 28 U.S.C. § 1334(c)(1), the state law claim could be tried first in the state court, with the derivative equitable remedy reserved for later determination by the bankruptcy court. Any proper and timely demand for a jury trial could easily be satisfied by the state court.

One argument against this approach of bifurcation and permissive abstention is that as a practical matter of judicial economy, bifurcation may increase the costs and delay in having a state trial court first determine the state law claim of fraud and damages, and then having a federal trial court later determine the derivative equitable remedy of nondischargeability. In fact, this bifurcation and sequential processing of issues frequently occurs in practice when the plaintiff has filed its fraud complaint in state court and has obtained a judgment for damages, but then the debtor. files a chapter 7 bankruptcy petition to stay the enforcement of that state court judgment. Thereafter, the judgment creditor has to file a complaint for nondischargeability. Now the bankruptcy court reviews the detailed findings of fact and conclusions of law by the state court incident to deciding the very narrow remedial issue of whether to grant an exception to the discharge. This form of review is generally very simple and straightforward. Indeed, federal appellate case law insists that the bankruptcy judges strictly adhere to the doctrine of collateral estoppel by giving full force and effect to the state court judgment on the state law issues of fraud and damages. See *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The decision whether to declare the debt nondischargeable flows directly from the liability determination of the underlying state-law fraud actions. The bankruptcy court does not need to conduct any further hearing for the pur-

pose of finding the facts, nor does the bankruptcy court need to expend any significant resources to reach the equitable determination. If the findings of fact and conclusions of law in the prior nonbankruptcy forum track the subtype of findings and conclusions on the substantive elements that arise under any sub-section of 523(a), then the determination of nondischargeability is an issue of law that can be determined on the plaintiff's motion for summary judgment. The fact that a plaintiff in a nondischargeability action under § 523(a)(2) did not bring an action in state court on its claim against the debtor before the debtor filed for relief under chapter 7 does not alter the logical, procedural or policy analysis in favor of bifurcating the state law issues of liability and damages from the equitable remedy under the Bankruptcy Code of nondischargeability.

A less compelling argument is to hold that the remedial issue on nondischargeability predominates over the foundational issues of state or federal nonbankruptcy law; and for this reason, the issues should be heard in a single proceeding before the bankruptcy court. That argument not only overstates the importance of the derivative determination of nondischargeability, but also discounts the importance of the foundational state law issues of fraud and damages. Discounting foundational state law issues is, however, contrary to our governing principles of federalism, comity, and respect for state law.

The equitable-bankruptcy-remedy-as-trump approach is substantively at odds with a long line of authority, expressed most forcefully in the opinion of the United States Supreme Court in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479, 82 S.Ct. 894, 900–901, 8 L.Ed.2d 44 (1962): ("Since [the legal] issues are common with those upon which respondents' claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims.") Under this approach,

outside of a bankruptcy case, a federal trial court, sitting in diversity, would preside over a jury trial on the substantive state law damage claims for fraud or deceit in the first phase, and then resort to a bench trial for deciding any appropriate equitable remedy.

In the world of commercial and non-bankruptcy litigation, a civil action for damages is often filed by one partner against another partner, alleging fraud or breach of fiduciary duty on the part of the defendant, which would be tried before a jury; then there are often other counts or prayers for equitable relief, including an accounting, the imposition of constructive trusts, or the dissolution of the partnership, which are non-jury-triable issues.

Analogously, in the context of a § 523(a)(2) adversary proceeding, the trial court will preside over a jury trial of the issues of fact and law on the foundational matters of the state law of fraud or deceit, and if and only if there is a judgment against the debtor, then the trial court will proceed to determine on the bench the equitable remedy of excepting that judgment from the scope of the debtor's discharge. The only reason for the bankruptcy court to become involved at this later stage is that for historical reasons, adversary proceedings under § 523(a)(2) fall within the exclusive jurisdiction of the bankruptcy court.

The remedy-as-trump approach also ignores several other salient matters. First of all, there is nothing exclusive or inherently "federal" in character about the jurisdiction of the bankruptcy court to determine the remedial issue of non-dischargeability—that jurisdiction is made concurrent with the state courts on a large majority of discrete subsets of non-dischargeability litigation under section 523(a). Thus, complaints brought under sub-sections 523(a)(1), (3), (5), (7), (8), (9), (10), (11), (12), (13), (14), (16), and (17) may be tried to conclusion in courts other than the bankruptcy court. Other than for historic reasons[5], no comprehensive theory or set of principled grounds exists to support the conclusion that complaints under sub-sections 523(a)(2), (4), or (6) should fall within the exclusive jurisdiction of the bankruptcy court.[6]

---

5. The customary place to begin any historical analysis is with the 1970 amendments to the Bankruptcy Act of 1898 in which Congress for the first time assigned the exclusive jurisdiction to determine nondischargeability proceedings with respect to the discrete subset of issues carried forward in the Bankruptcy Code under sub-sections 523(a)(2), (4), and (6). The leading article remains Vern Countryman, *The New Dischargeability Law*, 45 Am.Bankr.L.J 1 (1971). In this article, Professor Vern Countryman, who played a principal role in the drafting of the 1970 amendments as spokesman for the National Bankruptcy Conference, covers the history of jury trials on the underlying state law issues of liability and damages. Bankruptcy Referee Asa Herzog soon held in *In re Law Research Service, Inc.*, [1970–73 Transfer Binder] Bankr.L.Rep. (CCH) Para. 64,528 (Bankr. S.D.N.Y. Dec. 9, 1971) that he was authorized to conduct a jury trial on the issue of the equitable remedy of nondischargeability. Referee Herzog expanded upon that holding in *The Case for Jury Trials on the Issue of Nondischargeability*, 46 Am.Bankr.L. 235 (1972) to which Professor Countryman immediately responded by politely but firmly pointing out that the amendments preserved the right to a jury trial on the underlying state law issues of liability and damages, but did not expand that right to include the determination of the equitable issue in *Jury Trials on Nondischargeability—A Reply to Referee Herzog*, 46 Am.Bankr.L.J. 308 (1972). In adopting the Bankruptcy Code in 1978, Congress did not change the jurisdiction or procedure with respect to fraud, conversion, or other intentional torts—if there was any question about statutory authorization for bankruptcy judges to conduct jury trials, that was belatedly resolved in the 1994 amendments.

6. In 1994, Congress showed its lack of appreciation of the distinction between exclusive and non-exclusive jurisdiction over nondischargeability complaints by continuing the concurrent or non-exclusive jurisdiction with the state matrimonial courts complaints for determining of what is support or maintenance vs. what is a property settlement under § 523(a)(5) and whether it should be discharged, but added complaints for determination of an exception to this exception under

## B. Right to Jury Trial

■ The rub in this particular "core" adversary proceeding under the "exclusive jurisdiction" of the bankruptcy court is that the plaintiff made a timely demand for a jury trial. Every federal court is, of course, constitutionally obligated to respect the fundamental rights of a party to invoke a right to a jury trial under the Seventh Amendment of federal statute. The right of a party to a jury trial in an adversary proceeding filed in a bankruptcy case was fully considered in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). *Granfinanciera* dealt with an adversary proceeding, filed by the trustee in chapter 7 case, to recover damages arising from an alleged prepetition fraudulent transfer in which the non-debtor defendant made a timely demand for a jury trial. The Supreme Court noted that the trustee's complaint sought damages, i.e., a remedy of law. In deciding the appeal, the Court adopted a two-part test to determine that right. First, the trial court must determine whether the claim asserted would have been considered an action at law or an action in equity in eighteenth century England before the merger of the courts of law and equity. *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. 2782. Second, the trial court must determine whether the remedy sought is equitable or legal. This second consideration weighs more heavily than the first. *Id.* Applying this two-criteria test, the Court found that the trustee's claim for damages was the kind of claim that was long recognized as an "action at law" before the merger of law and equity. Since the defendant had not waived its right to demand a trial by jury by having filed a proof of claim, the defendant's demand for a jury had to be respected. The *Granfinanciera* Court did not address the issue whether an Article I bankruptcy judge could preside over that trial.

The Second Circuit dealt with the jury trial in an earlier decision than *Wachovia Bank and Trust Co. v. Banister*, 737 F.2d 225 (2d Cir.), *cert. denied*, 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 400 (1984). In dictum, the court noted that a debtor has a right to a jury trial in a nondischargeability proceeding on the issue of liability and damages based upon a claim for misappropriation or tortious conversion. In *Banister*, the Court of Appeals reversed the Bankruptcy Court's determination that the claim that plaintiff asserted constituted "willful and malicious conversion of property" under the existing nondischargeability provision of the Bankruptcy Code.[7] *Id.* at 226. Although the Court did not reach the issue of a right to a jury trial, it did state "[w]e agree with [the debtor] that if non-dischargeability had been correctly determined, he would have been entitled to a jury trial on the issues of liability and amount of indebtedness." *Id.* at 226 n. 1.

In a more recent decision, *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323 (2d Cir.1993), the Second Circuit may have had second thoughts when it suggested this time in dictum that a party does not have a right to a jury trial in a nondischargeability proceeding. In *Germain*, the Court of Appeals held that a bankruptcy trustee who asserts a common law lender liability action against a creditor has a right to a jury trial. In reaching its conclusion, the court stressed that the trust-

sub- § 523(a)(15) to the very short list of proceedings under the exclusive jurisdiction of the bankruptcy court. Since a § 523(a)(15) complaint is usually brought as a counterclaim to a subsection (a)(5) complaint, or vice versa, the issue of exclusive versus concurrent jurisdiction becomes hopelessly entangled, and has forced bankruptcy judges to spend more and more time on their dockets deciding difficult matters of matrimonial law for which by prior training or practice they rarely have any substantive expertise.

7. Section 17 of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 35 (1970) was the nondischargeability provision operative in the case. Section 17 was replaced by 11 U.S.C. § 523. *Banister*, 737 F.2d at 226. Section 523(a)(6) covers willful and malicious injuries to the person or property of another person.

ee's claim against the creditor was a common law claim for monetary damages which had no effect upon the allowance of a creditor's claim nor was it "integral to the reordering of relations among the parties." *Id.* at 1329. The court stated that this claim for damages was not tied to any request for equitable bankruptcy relief. *Id.*

The court distinguished the lender liability causes of action from claims for monetary damages that included some other bankruptcy relief. It concluded that these hybrid claims demand equitable relief despite their demand for monetary damages. Because of their essentially equitable nature, a party would not have a right to a jury trial. The court identified two examples of these types of claims: the avoidance of fraudulent transfers under § 548 and a declaration of dischargeability under § 523(c).[8] That is the *Granfinanciera* rule. With respect to a nondischargeability action, the court cited, without discussion, *In re Smith,* 84 B.R. 175 (Bankr. D.Ariz.1988); in Smith, the plaintiff was denied the right to a jury trial in a fraud complaint brought under § 523(a)(2)(A). This Court is not prepared to rely upon dictum in a Second Circuit opinion to decide matters of constitutional import. The dictum in *Germain* is also remarkably at odds with the Second Circuit's holding and rationale in *In re Ben Cooper,* 896 F.2d 1394 (2d Cir.), *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated* 924 F.2d 36 (2d Cir.), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). In *Ben Cooper,* the Court of Appeals held that the holder of a postpetition administrative expense had a right to a jury trial in what is essentially a core proceeding. It is doubtful that there is a consistent principled rationale that protects a creditor's right to a jury trial in a core proceeding arising

from a postpetition administrative expense and yet denies another creditor that same right as a plaintiff in a core proceeding arising from a prepetition unsecured claim.

An analysis of court of appeals opinions from other circuits shows an unresolved conflict in approaches. An earlier opinion of the Seventh Circuit in *In re Swope,* 466 F.2d 936 (7th Cir.1972), *cert. denied,* 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973) held that a debtor was not entitled to a jury trial on the issue of dischargeability under § 17(a)(2) of the Bankruptcy Act of 1898 for a debt incurred as a result of false pretenses or false representations. *Id.* at 938. The court, however, suggested that a jury trial could exist "with respect to the factual issues subsidiary to the question of dischargeability." *Id.* That is the kind of bifurcation that this Court is convinced should be recognized. A later Seventh Circuit decision in *In re Hallahan,* 936 F.2d 1496 (7th Cir.1991), however, suggested in dictum that a bifurcated nondischargeability proceeding was not appropriate, stating "we think it preferable to allow bankruptcy courts ruling on the dischargeability of a debt to adjudicate the issues of liability and damages also." *Id.* at 1508. The ultimate holding in the case, however, was that the debtor who requested the jury trial in the nondischargeability proceeding gad waived his jury trial rights. *Id.*

■ Under other constraints, this Court might also agree with the "preference" of the *Swope* Court, assuming that the only salient juridical value is the speedy and cost-efficient administration of justice. That preference, however, profoundly slights the constitutional dimension of the Seventh Amendment right to a jury trial. Every bankruptcy litigator knows that the demand for a jury trial is usually asserted for strategic leverage to force a more fa-

---

**8.** The first example fails to distinguish an adversary proceeding to avoid a mortgage lien or one in which the physical property is to be reconveyed to the bankruptcy estate; complaints seeking those remedies are indisputably equitable in nature. A § 548 complaint that, however, seeks only damages entitles the defendant to a jury trial, provided that the defendant did not waive that right by filing a proof of claim.

vorable settlement, but courts are precluded from ruling based upon the party's motivation that leads to a jury demand—if somebody is entitled to assert a constitutional right to a jury trial in a civil action and that person or entity makes a timely demand, it is not the province of the federal courts to override that demand based upon its sophisticated and pragmatic concerns over cost-efficiency or deterring strategic gamesmanship. Whenever Americans assert their constitutional rights, the cost-efficiency of judicial proceedings is usually impaired. It is not simply patriotic pietism to say that this is an unavoidable cost that our founding fathers determined was one that has to be tolerated in a free society. Americans continue to give great salience to the right of a party to demand a jury trial as a fundamental right and to resist what they perceive as elitist interference with that right in the name of efficiency.

Courts of appeals should also recognize, even if they are reluctant to make the point explicit, that many creditors perceive, rightly or wrongly, that bankruptcy judges tend to be more personally and institutionally sympathetic to debtors or to trustees acting to increase distributions to the bankruptcy estate. In this respect, the demand for a jury trial is intended to protect the creditor against the adverse impact of that perceived bias.

In *In re Merrill*, 594 F.2d 1064 (5th Cir.1979), the Court of Appeals for the Fifth Circuit held that the ("[Debtor] had no right to a jury trial on the dischargeability issue ... However, once the bankruptcy court determined that the debt was not dischargeable, [debtor] was entitled to a jury trial on the issues of liability and amount."). *Id.* at 1068. *Merrill* supports the bifurcation approach of this Court, for it recognizes the difference between the state law issues of liability and damages, and the federal bankruptcy equitable remedy of nondischargeability.

■ Applying the *Granfinanciera* analysis to each part, there is no cognizable jury trial right with respect to the limited issue of nondischargeability. A determination of nondischargeability "involves issues with an equitable history and for which there was no entitlement to a jury trial in courts of England prior to the merger of law and equity." *Hallahan*, 936 F.2d at 1505. Moreover, "the relief sought is equitable since the essence of a dischargeability claim is a declaration that the debt is indeed dischargeable or nondischargeable." *Id.* accord *In re McLaren*, 3 F.3d 958, 960 (6th Cir.1993) *(citing Hallahan, 936 F.2d at 1505)*. The plaintiff, however, does have a right to a jury trial concerning the liability and amount of the fraud damages. Fraud was an action at common law, and the plaintiff seeks monetary damages. *See Field v. Mans,* 516 U.S. 59, 68, 116 S.Ct. 437, 438, 133 L.Ed.2d 351 (1995) (holding that "fraud" under § 523(a)(2)(A) refers to the common law).

## C.   Waiver

■ Although the plaintiff has determined that the plaintiff has a right to a jury trial on the issues of liability and amount of damages on the fraud claims, this Court must next determine whether the plaintiff waived its right to a jury trial by commencing this adversary proceeding. The plaintiff in both the underlying bankruptcy case and in this adversary proceeding did not. The Supreme Court's rule in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) that filing a proof of claim constitutes a waiver of a jury trial right is not applicable in this case. Here the plaintiff never filed a proof of claim in the underlying Chapter 7 case because all creditors were notified that this was a no-asset case and that there was no point to filing a proof of claim.

The Second Circuit in *Germain*, moreover, took issue with a definition of "waiver" which focused merely on the act of filing a proof of claim. Instead, the Germain court interpreted the Supreme Court's opinions in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391

(1966), *Granfinanciera,* and *Langenkamp,* to hold that a party does not forfeit a right to a jury trial merely by filing a claim. *Germain,* 988 F.2d at 1329. The court held that "[f]or a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims." *Id.* The court concluded that neither a creditor nor a debtor "automatically waives all right to a jury trial whenever a proof of claim is filed." *Germain,* 988 F.2d at 1330.

Even under the Second Circuit's restrictive definition of "waiver," this Court finds that the plaintiff did not forfeit its right to a jury trial by commencing this adversary proceeding. The proceeding in this case has no effect on the allowance of claims or on the "hierarchical ordering of creditors' claims." The plaintiff is seeking a determination of nondischargeability in order to collect its claim after this bankruptcy case is closed—not to increase his share of existing estate assets. Moreover, because this is a no-asset case, there is no issue of the "hierarchical reordering of creditors' claims." The debtor has no nonexempt assets for the trustee to distribute to any creditors.

Even if this were an "asset case," a determination of nondischargeability would still have no effect on the "hierarchal reordering of creditors' claims." A determination of nondischargeability would not improve the priority ranking of the plaintiff's unsecured claim against the debtor's bankruptcy estate.[9] The only significance of

the determination of nondischargeability is that the judgment creditor may be able to execute against the nonexempt portion of any future earnings or acquisitions of the debtor.

■ Due to the importance of the Seventh Amendment right to a jury trial within our constitutional system, it is highly unlikely that Congress intended that a plaintiff should be deemed to have voluntarily waived its right to a jury trial when that party was forced to file an adversary proceeding in bankruptcy for a determination of nondischargeability on grounds of fraud. The creditor is "forced" to file its complaint in this Court in the very important practical sense that there is no other court from which it can seek relief. This is because the bankruptcy court has exclusive jurisdiction over nondischargeability determinations. *See In re Data Compass,* 92 B.R. 575 (Bankr.E.D.N.Y.1988) (A nondebtor defendant forced to file counterclaims to a complaint in a core bankruptcy proceeding does not waive his right to a jury trial. The defendant risked collateral estoppel if he does not assert his counterclaims.)

Had it been the debtor/defendant who had made a timely jury demand, this Court would be confronted with an entirely different issue; namely, whether by filing for bankruptcy relief, the debtor is deemed to have waived his right to a jury trial in any adversary proceeding that may be later brought against him during the pendency of his bankruptcy case.[10] In this case, the

9. A sophisticated creditor, alert to a procedural ambush, would make the deliberate decision *not to file a proof of claim* to avoid waiving its jury demand. The practical consequence is that it "waives" its (theoretical) right to participate in the pro-rata distribution to unsecured creditors from the proceeds of liquidation of the debtor's non-exempt assets. So rarely is any significant distribution made to unsecured creditors, it makes no sense for a plaintiff to waive a jury trial demand unless that creditor decides that by insisting upon a jury demand, it will only increase its litigation costs.

10. In the procedural scheme of things, there may be an asymmetry in the jury trial right of the debtor as compared to the creditor, but the "waiver" by the debtor should not prejudice the creditor's right to demand a jury trial. In theory and perhaps in practice, a chapter 7 individual debtor may be said to have made a conscious decision to trade off a *right to demand a jury trial in nondischargeability actions* for the benefit of discharging those liabilities for which a majority of his other creditors will not file similar complaints. A creditor is not given that same opportunity to weigh these cost-benefits; the exercise of its "rights" should not be preclud-

plaintiff is the one who made the jury trial demand, and it definitely did not initiate the bankruptcy case. Moreover, the plaintiff was very careful not to file a proof of claim in this case and by means of that arguably undermine its constitutional right to assert a jury demand. In a no-asset case such as this one, the whole point of a determination of nondischargeability is to preserve a prepetition claim for execution against the assets or income that the debtor acquires after the date he filed his bankruptcy petition.

### D. "Public Rights."

■ The court must next determine whether Congress denied a party the right to a jury trial on the underlying state-law fraud claim brought in a § 523(a)(2)(A) proceeding because the action involves "public rights" which were assigned to "tribunals without statutory authority to employ juries as fact finders." *Granfinanciera*, 492 U.S. at 51, 109 S.Ct. at 2795. In making this "public rights" determination, the Supreme Court cautioned that Congress could not deprive a party of a right to a jury trial merely by assigning its adjudication to an administrative tribunal. *Id.* at 52, 109 S.Ct. at 2796. The Court required that the legal right be "closely intertwined with a federal regulatory program" for a party to be so deprived. *Id.* at 54, 109 S.Ct. at 2797; *see also Germain*, 988 F.2d at 1331 ("if a party is going to be deprived of as fundamental a constitutional right as a jury trial, the controversy must be inextricably intertwined with a public right; the 'involvement' may not be casual or vague"). The Court held that a fraudulent conveyance action was better characterized as "private" right entitled to a jury trial than a "public" right. *Granfinanciera*, 492 U.S. at 55, 109 S.Ct. at 2797. The Court then described the fraudulent conveyance action as "quintessentially" a common-law action that was not "integral

to the restructuring of debtor-creditor relations." *Id.* at 58, 109 S.Ct. at 2799. Since the defendant in the fraudulent conveyance action never filed a claim against the estate, the action did not "arise as part of the process of allowance and disallowance of claims." *Id.*

This Court concludes that the fraud action in this case entails a determination, in large measure, of a "private" right. Similar to *Granfinanciera*, the adversary proceeding in this bankruptcy case has no effect upon the process of allowing or disallowing claims. Even if there were nonexempt assets of the estate to distribute to creditors, a determination of nondischargeability does not entitle a creditor to a larger share of the asset pool. That should be a dispositive consideration in addressing the plaintiff's demand for a jury trial.

### E. Bankruptcy Court's Authority to Conduct Jury Trials.

■ In *In re Ben Cooper*, the Second Circuit has held that a bankruptcy court may conduct jury trials in core proceedings. Congress then ratified this holding, subject to an important condition precedent, in the 1994 amendments to the Bankruptcy Code by adding § 157(e) which states:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial *if specially designated* to exercise such jurisdiction by the district court and with the express consent of all parties.

28 U.S.C. § 157(e) (1998) (emphasis added). The Board of District Court Judges for this district has decided not to designate its adjunct judicial officers to conduct jury trials.

In the final analysis, this Court's inability to conduct jury trials has not had a significant impact on its case management responsibilities. This is only one of three

---

ed by the decision the debtor makes under a very different and incommensurable calculus

· of costs and benefits.

or four adversary proceedings over the past two and a half years in which any party has demanded a jury trial, and in each instance those proceedings were transferred to the district court.[11]

The time is now ripe for the transfer or withdrawal of this proceeding because this Court denied the defendant's motion to dismiss the plaintiff's amended complaint for failure to state a claim, and the defendant has not filed a motion for leave to appeal. At the last pretrial conference, the defendant, through his counsel, stated that he would not oppose the transfer of this proceeding to the District Court.

### Conclusion

This court has determined that the plaintiff is entitled to a jury trial on liability and damages of the fraud action and that the plaintiff has not waived its jury trial right. Since this Court lacks the § 157(e) designation to properly conduct a jury trial, the judges appointed under Article III of the United States Constitution constitute the only judicial officers of the Bankruptcy Court under 18 U.S.C. § 1331 *et seq.* that have the authority to preside over jury trials.

For the reasons set forth in this Memorandum, the Clerk of the Bankruptcy Court is authorized and directed to transfer this adversary proceeding to the District Court.

So ordered.

---

**11.** This Court is aware of the practical consequences that may flow if many plaintiffs demand a jury trial in no-asset chapter 7 cases. Then those district courts that do not designate bankruptcy judges to preside over these proceedings may face an increased burden on their civil dockets. A similar burden may effect bankruptcy judges if they are "specially designated." If this hypothetical problem becomes real, then it may lead Congress to reconsider the concept of exclusive jurisdiction for sub-section 523(a)(2), (4), (6), and (15) complaints and amend the Code so that all nondischargeability actions fall under an original but concurrent jurisdiction. Then the bankruptcy courts or the district courts could abstain in favor of the state courts. A more radical solution would be to rid the Bankruptcy Code of nondischargeability actions in their entirety, or alternatively severely to restrict the scope of nondischargeability actions to intentional business torts and malicious personal injuries.