## In re SENTRY OPERATING COMPANY OF TEXAS, INC., et al., Debtor.

### Sentry Operating Co. and Sentry Operating Co. of Kansas, Inc., Plaintiff,

### v.

### Harry Billings, Melba Billings, Glen Billings and Linda Billings, Robert S. Wharton, Patsy R. Wharton, Robert A. Wharton and Coletta Wharton, Defendants.

Bankruptcy No. 01–60129–V2–11.
Adversary No. 01–6003.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Feb. 1, 2002.

Edward L. Rothberg, Weycer, Kaplan, Pulaski & Zuber, Houston, TX, for debtor/plaintiff.

Kiran A. Phansalkar, Conner & Winters PC, Oklahoma City, OK, for creditor/defendant.

John P. Dillman, Linebarger, Heard, et al., Thomas H. Grace, Locke Liddell et al., Peter Johnson, Attorney at Law, Lenard M. Parkins, Haynes & Boone LLP, Diana Merrill Woodman, Thompson Knight, Houston, TX, Lois J. Duran, Attorney at Law, Dallas, TX, Jeffrey D. Hassell, Sidney K. Swinson, Gable & Gotwals, Michelle M. McCune, McCune & Penney PC, Tulsa, OK, Conner & Winters PC, Oklahoma City, OK, Garland Ray Sandhop, Jr., Attorney at Law, Victoria, TX, W. Shane

Smithton, Hodgden, Hallren et al., Woodward, OK, for creditors.

### *MEMORANDUM OPINION DENYING MOTION FOR SUMMARY JUDGMENT (doc # 18) AND STRIKING DEMAND FOR JURY TRIAL (doc # 10)*

WESLEY W. STEEN, Bankruptcy Judge.

In this adversary proceeding, Plaintiffs (Sentry Operating Co. and Sentry Operating Company of Kansas, Inc.) seek a declaratory judgment that a non-competition agreement executed in conjunction with the purchase of two funeral homes are separate agreements that Plaintiffs can assume and assign, notwithstanding the fact that Sentry is discharged from its obligation to pay the promissory note related to the purchase of the funeral homes. Defendants (Harry Billings, Melba Billings, Glen Billings, and Linda Billings) timely demanded a jury trial. Plaintiffs objected to the demand for jury trial, which the Court treats here as a motion to strike the demand for jury trial. Plaintiffs also moved for partial summary judgment. For reasons set forth more fully below, and by separate order issued this date, summary judgment is denied and Defendants' demand for a jury trial is struck, and trial is rescheduled.

### JURISDICTION

This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code. The United States District Court has jurisdiction under 28 U.S.C. § 1334(b) and (e). By Order dated August 9, 1984, superceded by General Order 2001–12 on November 30, 2001, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B) and (O). The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1). The parties admit that the court has core jurisdiction.[1]

### FACTS[2]

In 1998, Sentry Operating Co. ("Sentry") purchased two funeral homes in a transaction that involved Harry Billings, Melba Billings, Glenn Billings, and Linda Billings. The documentation of the transaction included:

- A Stock and Asset Purchase Agreement;
- A Bill of Sale and Assignment;
- An Amended and Restated Promissory Note ("Note"); and
- A Goodwill Protection Agreement.

Paragraph 2 of the Stock and Asset Purchase Agreement states that "... the total purchase price to be paid by Sentry to the Sellers for the purchase of the Businesses is the sum of ONE MILLION FIVE HUNDRED TEN THOUSAND DOLLARS ... paid as follows:"

- $1,100,000 cash at closing;
- $300,000 promissory note;
- "As a portion of the Purchase Price and as additional consideration for the Sellers' execution, delivery and performance of the Goodwill Protection Agreement ... [$110,000] payable as set forth in the Goodwill Protection Agreement."

---

1. Complaint, paragraph 4; answer, paragraph 4.

2. The parties dispute only the interpretation and legal consequences of these facts.

The Goodwill Protection Agreement recites that "Sellers" [3] obligations are undertaken because they "operated" the funeral home businesses prior to the acquisition, because they built "strong patronage", and because they wanted to induce Sentry to purchase the businesses. The Goodwill Protection Agreement prohibits the Sellers (and their families and any persons receiving any portion of the business sales price) from engaging in the funeral services business for 12 years within the county in which the businesses were located *and* any adjacent counties. In addition, they are prohibited from providing funeral services to any person (or the family of any person) for whom they provided funeral services within the past 5 years, regardless of location.

In April, 2001, Sentry filed a bankruptcy case under chapter 11 of the Bankruptcy Code. A chapter 11 plan was confirmed and the Note was treated as a class 5 claim. Under the confirmed plan, part of the note will be paid and part will be discharged in bankruptcy. Through this adversary proceeding, Sentry seeks to assume and to assign the Goodwill Protection Agreement, notwithstanding discharge of part of the note.

### DISPUTE

There are two areas of disagreement.

1. Sentry contends that the non-compete agreement is a separate contract from the Asset Purchase Agreement, and that the Note can be discharged (in part) as an unsecured claim in bankruptcy while the Goodwill Protection Agreement can be assumed, assigned, and enforced.

The Billings contend that the agreements are an integrated whole, and that they are enforceable *en toto* or not at all.

2. Sentry contends that the Goodwill Protection Agreement is enforceable under Oklahoma law. The Billings contend that Goodwill Protection Agreement is not enforceable against Glen Billings because he was not a stockholder. Sentry argues that even if Glen Billings was not a stockholder, the agreement is binding against him because he was an employee and the contract is reasonable.

### THE RIGHT TO JURY TRIAL [4]

The Billings timely demanded a jury trial. Sentry objects (which the court takes as a motion to strike the demand for jury trial) on the basis that the Billings filed a proof of claim and thereby waived their right to a jury trial.

On May 30, 2001, Harry and Melba Billings filed claim number 8 in this bankruptcy case. The total amount of the claim is shown to be $310,237.65; the proof of claim asserts that it is secured by real estate worth $1,510,000. Attached to the proof of claim is a Claim Reconciliation asserting that the balance due on the Note is $266,737.65 and that the payments remaining on the Goodwill Protection Agreement total $43,500. Copies of the Note and mortgage (which appears on its face to apply only to the Note, not the Goodwill Protection Agreement) are attached to the proof of claim. A copy of the Goodwill

---

3. As discussed more fully below, it is not clear whether Glen Billings was a stockholder, notwithstanding his inclusion in the defined term "Seller".

4. Portions of this analysis were first written in Case # 00–50389, Adversary 01–5001. It is repeated here because that case has not yet been published and is not available to the parties.

Protection Agreement is also attached to the proof of claim.

On the same date, Glenn and Linda Billings filed proof of claim number 9. It asserts an unsecured claim for $36,250. Exhibit A attached to the proof of claim indicates that the basis for the claim is the Goodwill Protection Agreement. The only other documentation attached to the proof of claim is a copy of the Goodwill Protection Agreement.

In addition to filing these proofs of claim, the Billings participated in this bankruptcy case in other ways. In docket # 158 the Billings objected to confirmation of Sentry's proposed chapter 11 plan, alleging (among other things) that they had substantial claims for rejection of their executory contract (the Goodwill Protection Agreement). In docket # 169 the Billings withdrew that objection to plan confirmation.

*Seventh Amendment Right to Jury Trial*

Prior to 1979, there was extensive litigation in bankruptcy cases to determine whether a dispute was within the summary jurisdiction or the plenary jurisdiction of the district court. Bankruptcy judges could only exercise the summary jurisdiction of the court, which was generally viewed as including administrative matters and matters involving division of the estate, which was considered to be a *res* within the actual or constructive possession of the court. In *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), Justice White wrote:

The crux of the dispute here concerns the mode of procedure for trying out the preference issue. The bankruptcy courts are expressly invested by statute with original jurisdiction to conduct proceedings under the Bankruptcy Act. These courts are essentially courts of equity and they characteristically proceed in summary fashion to deal with the assets of the bankrupt they are administering. The bankruptcy courts 'have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession.' They also deal in a summary way with 'matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate.' This is elementary bankruptcy law .... *Katchen*, 382 U.S. at 326–327, 86 S.Ct. 467 (footnote and citations omitted).

In *Katchen*, the Court held that if a creditor filed a proof of claim in the bankruptcy case, the bankruptcy referee had summary jurisdiction to adjudicate the trustee's assertion of a right to recover a preferential, pre-petition payment to that creditor. The Court held that the referee had jurisdiction both to rule that the creditor could receive no payment from the estate (until the preference had been repaid) *and* to award an affirmative judgment against the creditor for return of the preferential payment.

In support of summary jurisdiction to adjudicate objections to claims and attendant counterclaims, the Court found that Congress intended rapid adjudication of claims against a bankruptcy estate:

When Congress enacted general revisions of the bankruptcy laws in 1898 and 1938, it gave 'special attention to the subject of making (the bankruptcy laws) inexpensive in (their) administration.' Moreover, this Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' and that provision for summary disposition, 'without regard to usual modes of trial attended by some

necessary delay,' is one of the means chosen by Congress to effectuate that purpose. *Katchen,* 382 U.S. at 328–329, 86 S.Ct. 467 (citations omitted).

In footnote 9, the *Katchen* decision emphasized that the referee's authority to award affirmative relief results from the preclusive effect of summary adjudication of facts in the process of determining the objection to claim. The Court concluded that the referee had summary jurisdiction to adjudicate an objection to a claim, that all matters necessarily adjudicated in that determination became *res judicata,* and that therefore the referee had jurisdiction to award affirmative relief to the extent that all elements necessary to determine entitlement to that relief had been definitively adjudicated in the claims objection process. The Court declined to consider whether the referee's summary jurisdiction might extend to award further affirmative relief even against a creditor who filed a proof of claim.

> We ... hold that determination of objections to claims, whether or not affirmative relief is decreed, does not constitute adjudication of a suit by the trustee, and thus it is not necessary to ascertain whether the creditor has 'consented' to such determination .... Rather, our decision is governed by the 'traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.' As this is the basis of our decision, we obviously intimate no opinion concerning whether the referee has summary jurisdiction to adjudicate a demand by the trustee for affirmative relief, all of the substantial factual and legal bases for which have not been disposed of in passing on objections to the claim. *Katchen,* 382 U.S. at 333, 86 S.Ct. 467 (citations omitted).

Thus, once a bankruptcy court has dealt with the preference issue nothing remains for adjudication in a plenary suit. The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts. *Id.* at 334, 86 S.Ct. 467 (citations omitted).

The *Katchen* court then addressed the issue of the right to jury trial under the Seventh Amendment. The Court held that the determination of objections to claims in bankruptcy cases is an equitable proceeding triable in the summary jurisdiction of the bankruptcy court and that this is constitutionally permissible as an exercise of Congress' authority under Article I, Section 8 to establish uniform laws on the subject of bankruptcy. The Court then held that these summary proceedings were within the equity jurisdiction of the bankruptcy court because they involve a determination of entitlement to a share of a *res,* the bankruptcy estate. Since the proceeding is equitable in nature, there is no right to jury trial.

> As bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession, and as the proceedings of bankruptcy courts are inherently proceedings in equity, there is no Seventh Amendment right to a jury trial for determination of objections to claims, .... *Katchen,* 382 U.S. at 336–337, 86 S.Ct. 467 (citations omitted).

Finally, the Court addressed whether the bankruptcy court should abstain or should abate proceedings on objections to claims to avoid *res judicata* or collateral estoppel consequences and to allow a plenary action to proceed on the legal claim for affirmative relief. The Court held that the bankruptcy court had the authority to do so, but generally should not.

We think that Congress intended the trustee's ... objection to be summarily determined; and to say that because the trustee could bring an independent suit against the creditor to recover his voidable preference, he is not entitled to have his statutory objection to the claim tried in the bankruptcy court in the normal manner is to dismember a scheme which Congress has prescribed.

... To implement congressional intent, we think it essential to hold that the bankruptcy court may summarily adjudicate the ... objection; and, as we have held above, the power to adjudicate the objection carries with it the power to order surrender of the preference. *Katchen*, 382 U.S. at 339–340, 86 S.Ct. 467 (citations omitted).

Earlier, in *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932), the Court had held that if a creditor does not file a proof of claim, a bankruptcy trustee cannot proceed in equity to recover a preferential transfer because an adequate remedy exists at law. In *Katchen*, the Court obviously concluded that when the creditor does file a proof of claim, adjudication on objections to the proof of claim, including adjudication of affirmative relief on the preference, could proceed in equity, notwithstanding the adequate remedy in law, because rapid equitable proceedings are necessary to fulfill congressional purpose.

Congress rewrote bankruptcy law, and federal jurisdiction over bankruptcy cases, in 1978 and again (after the Supreme Court declared the 1978 jurisdictional scheme unconstitutional) in 1984.

The 1978 Act abolished the statutory distinction between plenary and summary bankruptcy proceedings, on which the Court relied in *Schoenthal* and *Katchen*.... [I]n the 1984 Amendments Congress drew a new distinction between "core" and "non-core" proceedings .... *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

In *Granfinanciera*, the Supreme Court held that a creditor who had not filed a proof of claim in a bankruptcy case had a right to a jury trial when sued by the bankruptcy trustee to recover a fraudulent conveyance. The majority opinion distinguished *Granfinanciera* from *Katchen* on the basis that the creditor had filed a proof of claim in *Katchen*, but the creditor in *Granfinanciera* had not. But the vigorous debate between the majority opinion and the dissent in *Granfinanciera* left substantial doubt about the continued viability of *Katchen*. Some of that doubt was resolved in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), which held that a creditor who *did* file a proof of claim in a bankruptcy case did *not* have a right to a jury trial with respect to a preference action because the filing of a proof of claim triggers the process of allowance and disallowance of claims that is heard only in equity.

In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. *Langenkamp*, 498 U.S. at 44, 111 S.Ct. 330 (citations omitted).

But, in *Langenkamp*, the Court emphasized that it was dealing with a preference action. Commentators have questioned whether the same result applies to counterclaims that do not involve the trustee's avoiding powers:

Each of the three Supreme Court cases speaking to the waiver effected by filing a proof of claim—*Katchen v. Landy, Granfinanciera*, and *Langenkamp v. Culp*—involved avoiding power counter-

claims. It is not surprising that the Court found the counterclaims to be part of the claims allowance process; a claim cannot be allowed if the claimant has not returned property conveyed by the debtor in an avoidable transaction. Whether the same is true of other types of counterclaims is less clear.[5]

Indeed, literally hundreds of published opinions have tried to determine the extent of the waiver of the right to jury trial that results from a creditor filing a proof of claim. For example, in *Germain v. Connecticut Nat. Bank,* 988 F.2d 1323 (2nd Cir.1993), the court held that a trustee had a right to jury trial on a lender liability claim against a creditor who had filed a proof of claim. In that case, it was the creditor who sought to avoid the jury trial by arguing that the debtor's right to jury trial was waived when the creditor filed its proof of claim. The Second Circuit held that the trustee's right to jury trial was not waived by the creditor filing a proof of claim for a pre-petition debt. Perhaps it was important in *Germain* that the creditor's proof of claim was a *pre-petition* claim, but the lender liability action involved allegations of *post*-bankruptcy lender misconduct. Therefore, it is questionable whether the decision actually adjudicates jury trial rights with respect to objections to allowance of a claim. In *In re Jensen,* 946 F.2d 369 (5th Cir.1991), the court held that a *debtor* does not waive its right to jury trial on a pre-petition claim merely by filing a bankruptcy petition. It is not clear that the defendant was a creditor or that it had filed a proof of claim. However, the court cited, with approval, the decision of the Seventh Circuit which held that a debtor did not have a right to a jury trial on a creditor's objection to discharge if the creditor *has* filed a proof of claim. The Fifth Circuit stated:

[T]he debtor was not entitled to a jury trial in *Hallahan,* not because the debtor had filed a petition in bankruptcy, but because the plaintiff had submitted his claim against the debtor to the equitable jurisdiction of the bankruptcy court. *Filing a proof of claim denied both the plaintiff and the defendant, debtor, any right to a jury trial that they otherwise might have had on that claim. Jensen,* 946 F.2d at 374 (emphasis added).

The enormous number of cases attempting to apply the Seventh Amendment to bankruptcy cases cannot be reconciled. Some have tried to distinguish between compulsory and permissive counterclaims. Others have focused on classification of the matters as within the core or non-core jurisdiction of the bankruptcy court. There are many other distinctions.

 The Supreme Court has made it clear that a party does not lose its constitutional right to jury trial merely because 28 USC § 157 classifies the matter as a core matter. *Granfinanciera* clearly involved a core matter (28 USC § 157(b)(2)(H), a proceeding to recover fraudulent transfers) but the defendant had a right to a jury trial. Therefore, the Defendant's admission that the matter is a core matter does not waive the jury trial right.

 The courts are struggling with how to define the limits of the jury trial waiver that results from a creditor filing a proof of claim. There seems to be a consensus that jury trial rights are not waived on all issues between the parties but it is difficult to articulate the limits of the waiver.

Perhaps (at least for this case involving issues directly raised by the proofs of claim) the best approach is to return to the origins, *Katchen,* and to reason to a con-

5. *Collier on Bankruptcy,* ¶ 3.08[2] (15th ed.2001).

clusion of the jury trial issue from what is reaffirmed from that opinion. Contrary to *Collier's* speculation, *Katchen* was not based on the fact that the trustee was exercising an avoidance power. The underpinning of *Katchen* was the waiver by a creditor of jury trial rights with respect to any issues necessary to adjudicate its claim (and objections to its claim) and the *res judicata* and collateral estoppel effect of any determinations made during that process. Notwithstanding Justice White's dissent, the majority in *Granfinanciera,* and *Langenkamp* insist that *Katchen* is not overruled; the significance of the waiver by the creditor is re-emphasized in *Langenkamp.* In addition, *Granfinanciera* recognizes that the congressional objective of speed and efficiency for bankruptcy proceedings is continued in the new jurisdictional scheme, and indeed applies *a fortiori* to the new legislation.[6]

▬ One can reconcile the Supreme Court decisions, with guidance for decision of this case, as follows: if a creditor files a proof of claim in a bankruptcy case, the bankruptcy court should proceed with all dispatch to determine any objections to that claim, notwithstanding the fact that some of the objections to the claim might constitute separate actions at law if the creditor had not filed a proof of claim. The creditor does not have a right to a jury trial with respect to determination of the creditor's claim against the estate or with respect to any objections to the claim. The objections to the claim, even to the extent that they constitute a counterclaim for affirmative relief that exceeds the creditor's claim, can be adjudicated by the bankruptcy judge without a jury and the bankruptcy judge can award a judgment for affirmative relief against the creditor if, and only if, all elements necessary to

adjudication of the counterclaim are part of the adjudication of the objection to claim. The creditor retains a right to a jury trial with respect to any issue that need not be adjudicated as part of the allowance of the claim or an objection to the claim. In any event, the consequences of *res judicata* and collateral estoppel apply to the bankruptcy judge's adjudication. Although the bankruptcy court has the authority to stay its proceedings to allow actions at law to proceed before a jury, it should not do so, especially when speedy and economical adjudication requires that the court proceed with determination of the creditor's claim and any counterclaim.

To the extent, then, that the bankruptcy court must adjudicate any issue necessary to allow or to disallow a claim filed by a creditor, there is no right to a jury trial. The problem in this case is more difficult, because when dealing with executory contracts one may not know which party (creditor or debtor) has a claim and one may not know how to evaluate the claim until the contract is assumed or rejected under Bankruptcy Code § 365. Some bankruptcy courts have attempted to determine whether there is an enforceable executory contract in the summary proceeding in which they determine whether to allow the debtor to assume or assign the contract and at the same time that they determine "who owes whom how much." Those courts would conclude that neither party is entitled to a jury trial because the issues of assumption of an executory contract are core, summary matters, and are closely related to allowance and disallowance of claims. Although that process would be more efficient, two circuit courts have held that the procedure is constitutionally impermissible unless the issues are segregated. But so long as the court

---

6. *See* footnote 16 of the majority opinion, agreeing with footnote 4 of Justice White's dissent. *See Granfinanciera,* 492 U.S. at 63 n. 16 and 75 n. 4.

proceeds in a plenary proceeding (an adversary proceeding), it would appear that permission to assume the contract, the enforceability of the contract, and the obligations due between the parties can be determined in the same adversary proceeding. Jury trial rights must be preserved, but the right to a jury *vel non* is determined under *Katchen* and its progeny.

In *In re Orion Pictures Corp.*, 4 F.3d 1095 (2nd Cir.1993), the court held that a motion to assume or to reject an executory contract was a summary, core proceeding. The court further held that the bankruptcy court should not, in that summary proceeding, adjudicate contract disputes. Finally, the court held that the bankruptcy court may simultaneously decide a motion to assume or reject an executory contract and contract disputes, so long as the disputes are conceptually segregated.

> Our conclusion that the bankruptcy court erred in adjudicating the key-man issue in deciding the Motion to Assume is also informed by the fact that motions to assume always involve contracts, and allowing a bankruptcy court to decide a disputed *legal* contract issue in the course of deciding a motion to assume could usurp litigants' Seventh Amendment jury-trial rights. Our holding that contract issues may not be decided as part of a motion to assume eliminates the possibility that any such constitutional problems will arise. We note that there is no prohibition on bankruptcy courts, for reasons of efficiency, hearing motions to assume and trying related adversary proceedings simultaneously. They merely must be treated as conceptually separate proceedings, which is to say that adversary proceeding issues are not to be decided as part of a motion to assume. [4 F.3d 1095, 1099.]

The Ninth Circuit agreed in *In re G.I. Industries, Inc.*, 204 F.3d 1276 (9th Cir. 2000). In that case, the Ninth Circuit made it clear that the bankruptcy court could rule on the contract issues, provided that it did so in the context of an objection to claim. And the Ninth Circuit found that the bankruptcy court retained the right to rule on the objection to claim, notwithstanding the fact that a state law suit on that subject had previously been remanded to the state court (under mandatory abstention) and notwithstanding the fact that the bankruptcy court had previously authorized the rejection of the executory contract.

In these cases, the circuit courts seem to suggest that the bankruptcy court can either (i) in a summary proceeding authorize the debtor to assume or to reject an executory contract, while leaving to subsequent adjudication the validity, enforceability, rights of the parties, and other contract issues, or (ii) combine the assumption/rejection litigation with the contract dispute litigation in a plenary proceeding, preserving jury trial rights on contract issues, unless those contract issues are decided as part of the allowance or disallowance of claims filed by the creditor against the estate.

*Conclusions Concerning The Billings' Right to Jury Trial*

■ This dispute has been brought as an adversary proceeding and therefore complies with the admonition (discussed above) that the contract issues must not be tried in a summary proceeding brought to assume or to reject the executory contract. *Orion*, allows "for reasons of efficiency, hearing motions to assume and trying related adversary proceedings simultaneously" provided that the two issues "must be treated as conceptually separate proceedings." *G.I. Industries, Inc., Orion*, and *Katchen* all conclude that the contract is-

sues may be decided by the bankruptcy court without a jury if, and to the extent that, the creditor files a proof of claim and all contract issues must be decided in order to allow or to disallow the proof of claim.

In this case, the creditors have filed proofs of claim, attaching copies of the Goodwill Protection Agreement, and asserting claims of $43,500 and $36,250 under the agreement.

To determine the allowance or disallowance of this claim, the Court must determine whether the Goodwill Protection Agreement is enforceable. Therefore, the Court will proceed to do so without a jury.

## MOTION FOR SUMMARY JUDGMENT

### Summary Judgment Standard

Summary judgment is warranted if a party establishes that there is no genuine dispute about any material fact and the law entitles it to judgment, Fed.R.Civ. P. 56(c). Rule 56(c) mandates "the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

All justifiable inferences will be drawn in the nonmovant's favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), but conclusory affidavits will not suffice to create or negate a genuine issue of fact. *See Reese v. Anderson*, 926 F.2d 494, 498

(5th Cir.1991); *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir.1986). Unless there is sufficient evidence to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511. Admissibility of evidence on a motion for summary judgment is subject to the standards and rules that govern evidence at trial. *See Rushing v. Kansas City Southern Railway Co.*, 185 F.3d 496 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000).

### Application of the Standard to This Motion

■ Sentry has filed a motion for partial summary judgment regarding whether the Goodwill Protection Agreement is enforceable. Sentry expressly did not ask for summary judgment on whether the Purchase Agreement and the Goodwill Protection Agreement are a single agreement or separate agreements. Sentry argues: (i) that the Goodwill Protection Agreement is enforceable as a contract by stockholders selling their stock, or alternatively (ii) that the agreements are reasonable and within the limitations of Oklahoma law. In support of the first argument, Sentry refers to the documents which define Harry, Melba, and Glen Billings as a "Seller".

In response, the Billings concede that Harry and Melba Billings were stockholders. If the Goodwill Protection Agreement is a separate executory contract, then they, Harry and Melba Billings would concede that they are bound.[7] However, Glen Billings denies that he was a stockholder and he has submitted documentation that supports his position.

---

7. The ability to assume and assign the contract requires a determination of whether the Goodwill Protection Agreement and the Asset Purchase Agreement are a single contract or whether they are separate contracts. That issue was specifically not put at issue in the Motion for Summary Judgment.

Examining the documentation submitted in support and in opposition to the motion for summary judgment, the court concludes that there is a material issue of fact about whether Glen Billings was a stockholder.[8] Looking first at the contracts, the court concludes that there is some ambiguity about the definition of the term "Sellers". In its first paragraph, the Goodwill Protection Agreement defines Harry Billings and Melba Billings as "Billings". It separately lists Glen Billings and Linda Billings, each as an "individual". If all were stockholders, it is not clear why they were separately defined. Further, in the first "WHEREAS" paragraph, the Goodwill Protection Agreement refers to the Asset Purchase Agreement which allegedly defines all four as "Sellers". However, the Asset Purchase Agreement does not include Linda Billings as a Seller. (See page 1, "Background", paragraph B.) The reason for separate definition of "Billings" from the definition of Glen and Linda Billings as "individuals" and the incorrect (or ambiguous) reference to the definitions in the Asset Purchase Agreement preclude the court from finding that the documents are clear and controlling. There are other ambiguities. The Stock and Asset Purchase Agreement states, in paragraph 3.1, that the parties own the stock as reflected on Exhibit B. But there is no Exhibit B to the contract submitted in support of the motion for summary judgment. There is an Exhibit B to the Bill of Sale and Assignment, but that exhibit lists "Excluded Assets," it lists no stock. The note given in payment of the stock was issued solely to Harry and Melba Billings, not to Glen Billings. In addition, Glen Billings has

submitted documentation in opposition to the motion for summary judgment that denies that he was, in fact, a stockholder. Obviously there is an issue of fact for trial.

Sentry's motion for summary judgment asserts: "In the Alternative, the GPA is enforceable as written or may be reformed and enforced pursuant to prevailing Oklahoma case law holding that a reasonable covenant not to compete will be upheld even if the obligor is an employee rather than an owner." Paragraph 2 of the Goodwill Protection Agreement provides for reformation of the agreement if necessary to make it enforceable. The "reasonableness" of the contract, and the appropriate reformation of the contract (if any) and the limitation (if any) on Glen Billings' ability to earn a living despite the contract, clearly are issues of fact for trial.

Because there are material issues of fact with respect to the enforceability of these contracts, summary judgment is denied.

### TRIAL CANCELLED; STATUS CONFERENCE SET

This matter is scheduled for trial February 6 through February 8. That trial is cancelled to allow the participants time for proper preparation in light of this decision. The Court will conduct a Rule 7016 conference on February 6, 2002 at 9:30 a.m.

---

8. Partial summary judgment is not appropriate as to Harry and Melba Billings because even if they were stockholders, the agreement might not be assumable and assignable if the sale agreement and the Goodwill Protection Agreement were parts of a single agreement, requiring performance on the note to allow assumption and assignment of the Goodwill Protection Agreement. The matter of their stock ownership is conceded and need not be tried.